## PHELPS and others *against* RILEY.

*June, 22.*

Where the declaration, in an action on a promissory note, stated, that the defendants, by a note *under their hands,* promised to pay ; and the note exhibited in evidence appeared to have been signed by procuration ; it was held, that this was no variance, the allegation being according to the operation of law.

In an action on a promise " to pay eighty-eight dollars in current bank bills, such as pass at *N.* between man and man," to which the defence was usury ; the defendant having proved, that the consideration was only eighty dollars in specie, the plaintiff, to repel this defence, offered to prove, that such bills, at the date of the contract, were worth ten *per cent.* less than their nominal amount ; it was held, that this was a promise to deliver bank notes, of the specified description, to the nominal amount of eighty-eight dollars, and that, therefore, such evidence was relevant and proper.

Where a person, who had executed a promissory note in behalf of and by procuration from another, and had afterwards given bond for his principal to prosecute an appeal from a judgment on that note, was called by the payee, as a witness to the execution ; it was held, that he was not protected from giving his testimony, on the ground that it would be against his interest ; having voluntarily assumed that interest, at the request of the adverse party, and not in the common course of business for his own profit, after the payee had an interest in his testimony.

This was an action of *assumpsit,* brought by the executors of *Dorcas Phelps,* deceased, against the surviving partner of the firm of *Riley* & *Luddington,* on a promissory note. The declaration alleged, " that the said *Riley* and *Luddington,* by a certain writing or note, under their hands, by them well

executed, promised to pay the said *Dorcas Phelps* the sum of eighty-eight dollars."

The cause was tried at *Litchfield, August* term, 1819, before *Peters*, J.

The defendant pleaded *non assumpsit*, with notice that he should give usury in evidence.  The plaintiffs, to make out their case, offered in evidence the following note : " *Norfolk, October* 15th, 1815.  Sixty days after date, we promise to pay *Dorcas Phelps* eighty-eight dollars, in current bank bills, such as pass in *Norfolk* between man and man, with interest ; as witness our hands ; value received.

*Riley & Luddington,*

per     *Collins Baldwin.*"

This note *Collins Baldwin*, with the consent of *Dorcas Phelps*, had indorsed.  He had also given bond for the defendant, on the appeal of this cause from the county court.— To prove the execution of the note, the plaintiffs offered *Baldwin* as a witness ; one of the plaintiffs, being one of the three executors of *Dorcas Phelps*, having previously given him a release from his liability as indorser.  *Baldwin* himself refused to testify, on the ground that he was interested to defeat a recovery, and that he could not be compelled to testify against his interest.  But the judge over-ruled this objection, and ordered him to testify.

The defendant also objected to the plaintiffs' reading the note in evidence, on the ground that there was a material variance between it and the declaration ; inasmuch as the declaration described a note executed by *Riley & Luddington*, under their own hands, and the note offered in evidence appeared to be signed by procuration.  This objection, also, was over-ruled, and the note was admitted.

The defendant then introduced evidence to prove, that the note was given in pursuance of a corrupt and usurious agreement between the parties to it.  The evidence established the fact, that the only consideration of the note was eighty dollars in specie, at that time loaned, by the payee, to *Riley & Luddington*.  The plaintiffs, on their part, offered to prove, that at that time, and through the whole of the preceding year, such bank bills as were described in the note, were actually worth ten *per cent.* less than their nominal value.  The defendant objected to such evidence, on the ground that it was irrelevant, not tending to prove any fact in issue.  The judge admitted it.

*Litchfield,*
June,
1820.

*Phelps*
*v.*
*Riley.*

*Litchfield,*
*June,*
*1820.*

Phelps
*v.*
Riley.

The plaintiffs having obtained a verdict, the defendant moved for a new trial, on the ground that the evidence offered by the plaintiffs, and objected to, by the defendant, was improperly admitted. The motion was reserved.

*P. Miner* and *J. W. Huntington,* in support of the motion, contended, 1. That the note was not admissible under the averment in the declaration, that it was executed by *Riley & Luddington,* " under their hands." The rule is, that an instrument may be declared on, according to its legal operation or effect, or according to the matter of fact. *Collins & al.* v. *Emett,* 1 *H. Bla.* 313. *Brucker* v. *Fromont,* 6 *Term Rep.* 650. But this declaration describes the note in question neither according to its legal operation, nor according to the strict matter of fact. The legal operation of an instrument signed by procuration, where the agent is properly authorized, is, that it is the act and deed of the principal, but not that it is *under his hand.* It is, indeed, tantamount to a making and execution by him ; but nothing more. It is, therefore, proper to say of a note signed by procuration, that " the defendant made and executed his certain note in writing," &c. ; for, in contemplation of law, it is made and executed by him ; but it is not *under his hand.* The words " under his hand" imply, necessarily, his own *personal* signature. Nor is the description of the note according to the matter of fact. The signature is " *Riley & Luddington,* per *Collins Baldwin.*" It is in the hand-writing of *Baldwin,* and is *his* (not *Riley & Luddington's*) personal act. *Levy* v. *Wilson,* 5 *Esp. Rep.* 180. *Pease & al.* v. *Morgan,* 7 *Johns. Rep.* 468. This variance is a material one ; for the execution of an instrument by procuration, is a traversable fact.

2. That the evidence as to the depreciation of the bank bills was irrelevant and inadmissible. By the terms of the note, there is an absolute engagement to pay eighty-eight dollars ; and the words " in current bank bills" may reasonably be said to mean—in such bank bills as are current at their *par value* ; or in any current bank bills, making the amount of eighty-eight dollars, at their true value. The expression was intended to exonerate the promissor from discharging his obligation, by the payment of *coin* ; but still giving the promissee a right to require the full amount of eighty-eight dollars, though in depreciated bank paper.

3. That *Collins Baldwin* could not be legally compelled to testify against his interest. The rule is, that no man shall be compelled to testify to a fact, which will render him *liable to an action*, or charge him with a *debt*, or subject him to a *penalty*. *Storrs v. Wetmore, Kirb.* 203. *Starr* v. *Tracy* & al. 2 *Root* 528. *Swift's Ev.* 77. & seq. *Hawkins* v. *Perkins*, 1 *Stra.* 406. To compel a man to testify against his interest, would not only be unreasonable, with respect to the witness, but would be highly dangerous to the public, from the temptation it would offer to perjury. But it will be said, that the giving of bonds, by which the witness became interested, was his own act; and that he could not thereby deprive the party of the benefit of his testimony. The answer to this, is, that the rule is confined to cases where the act creating the interest is a mere wanton and vain, or, at best, a gratuitous act; and not where he becomes interested in the regular course of business. *Forrester* & al. v. *Pigou*, 1 *Mau. & Selw.* 9. S. C. 3 *Campb.* 380.

*N. B. Benedict*, contra, contended, 1. That the averment that *Riley & Luddington*, " in and by a certain writing, or note, under their hands, by them well executed, promised" &c. does not necessarily import, that they subscribed the note *with their own proper hands*, but merely that they executed it; and whether by themselves, or by an agent, is immaterial. The declaration states the transaction according to its legal effect. The proof could be no surprise upon the defendant, as it might have been in the cases of *Levy* v. *Wilson* and *Pease* & al. v. *Morgan*, relied on by the defendant. He cited *Drewry* v. *Twiss & al.* 4 *Term Rep.* 558. *Hunt* v. *Adams*, 6 *Mass. Rep.* 519. *Sigony* v. *Richards* & al. 1 *Root* 119.

2. That the evidence offered to explain and repel the charge of usury, was properly admitted. The court will never intend the contract to be usurious, unless it is so necessarily. The note being payable in such bank bills as passed between man and man in *Norfolk*; what those bills were, and whether they passed at par, or at a discount, were facts proper to be ascertained, and could be ascertained only by proof. If there were bills current in *Norfolk* worth only ninety cents in the dollar, compared with a specie standard; then a promise to pay 100 dollars in amount of those bills would be precisely tantamount to a promise to pay 90 dollars in amount of specie. To this point he cited *Maddock* v. *Rumball & al.* 8

*Litchfield,*
*June,*
*1820.*

*Phelps*
*v.*
*Riley.*

*East,* 304. *The Portland Bank* v. *Storer,* 7 *Mass. Rep.* 433. *The Northampton Bank* v. *Allen,* 10 *Mass. Rep.* 284.

3. That a new trial ought not to be granted on the ground that *Collins Baldwin* was required to testify to the execution of the note. For, in the first place, if the witness had an interest opposed to that of the party calling him, it would not, by the general rule, excuse him. *Phill. Evid.* 208. and note (*a*). 1 *Hall's Amer. Law Journ.* 223. Secondly, if such an interest would, by the general rule, excuse the witness, still this witness could not refuse to testify, because he became interested, by his own voluntary act, after the plaintiffs had an interest in his testimony. *Bent* v. *Baker,* 3 *Term Rep.* 34. 37. *Simons* & al. v. *Payne,* 2 *Root* 406. But, thirdly, if he could refuse to testify, this is no cause for granting a new trial. It is to be remembered, that the *defendant* did not, and could not, object. If any one is injured, by the decision, it is *the witness.* Will the granting of a new trial help *him ?* If he has rendered himself liable to an action, by the testimony which he has given, can he be protected, by setting aside this verdict ? Why should a new trial be granted in favour of the defendant, who has suffered no injustice, to vindicate the rights of a stranger to the suit ?

HOSMER, Ch. J. The plaintiffs aver, that *Riley & Luddington,* by a note *under their hands,* promised to pay a certain sum ; and when exhibited, the note appears to have been subscribed for *Riley* and *Luddington,* by *Collins Baldwin,* their attorney. Whether this constitutes a variance, is the first question made.

In every declaration founded on promise, it is necessary to shew the contract, and how the defendant became a party to it ; as that he made, accepted, indorsed or delivered it. These allegations, however, are sufficient, although the defendant did not in fact do either of the acts himself, provided he authorized the doing of them. The pleader may set forth the fact, with literal precision ; or he may declare according to the operation of law on the contract.

The averment, that *Riley* and *Luddington, under their hands,* promised, &c. is not such a declaration on fact, that it requires proof of the act having been done by them *personally.* It is sufficient that facts took place, which, in point of law, are equivalent. The case of *Levy* v. *Wilson,* 5 *Esp. Rep.*

180., is not parallel. The expression, " his own proper hand-writing," in that case, ties down the allegation to the fact, as much as if it had been averred, that the defendant did the act, "by his own natural hand." But, the words, " under their hands," are not so precise as to authorise the court in saying, that the averment was on the literal fact, and not on the operation of law. 3 *Chitt. Plead.* 2. *Bass* v. *Clive,* 4 *Campb.* 78. *Chitt.* on *Bills,* 358, 9. *Turberville* v. *Stampe,* 1 *Ld. Raym.* 264. *Brucker* v. *Fromont,* 6 *Term Rep.* 659. *Helmsley* v. *Loader,* 2 *Campb. Rep.* 450. *Eliot* v. *Cooper,* 2 *Ld. Raym.* 1376. *Erskine* v. *Murray,* 2 *Ld. Raym.* 1542. *Sigony* v. *Richards,* & al. 1 *Root,* 119.

It is said, that the contract declared on, is usurious, the consideration having been eighty dollars only. The promise was " to pay eighty-eight dollars in current bank bills, such as pass in *Norfolk* between man and man." In the construction of this agreement, I have experienced no difficulty. It was to deliver bank notes, of the specified description, to the nominal amount of eighty-eight dollars. The paper circulating at *Norfolk,* at the date of the contract, having depreciated ten *per cent.* repels the pretence of usury.

Whether the court should have compelled *Collins Baldwin* to testify ; and if not, whether for this cause a new trial ought to be granted ; are the remaining enquiries.

The plaintiffs had acquired an interest in the testimony of *Baldwin,* by his execution of the note. This was before he indorsed it ; or if they are to be considered as cotemporaneous acts, the right of the plaintiffs to his testimony was not relinquished. Undoubtedly, the plaintiffs subjected themselves to a disadvantage, by admitting an opposing interest in *Baldwin ;* but their privilege in the evidence of the witness,—a privilege which might be indispensible to their recovery,—they did not abandon. Besides, the release of *Baldwin* places him in the same condition, as if he had never indorsed the note. Nothing remains but the interest which he voluntarily assumed, by giving bonds, without the consent or interference of the plaintiffs ; and this constitutes no reason for withholding his testimony.

It was laid down in *Bent* v. *Baker,* 3 *Term. Rep.* 34. 37. as a general principle, that where a person makes himself a party in interest, after a plaintiff or defendant has an interest in his testimony, he may not deprive the plaintiff or defendant of

*Litchfield,* June, 1820.

*Phelps* v. *Riley.*

*Litchfield,*
*June,*
*1820.*

Phelps
*v.*
Riley.

his testimony. Although this assertion may be too broad, according to the intimation in *Forrester* v. *Pigou,* 1 *Mau. & Selw.* 9., and a person must not be prevented from transacting business for his own advancement in life ; nor, if this is done *bona fide,* be compelled, in such case, to testify against himself; yet this principle has no bearing on the present case. The interest of *Baldwin* was not acquired in the common course of business for his own profit, but by agreement with the defendant, without any expectation of personal benefit. It would be dangerous in the extreme, to permit the right of the plaintiff to his testimony to be destroyed, by his voluntary act, performed at the request of the defendant. In *Jackson* d. *Woodhall* & al. v. *Rumsey,* 3 *Johns. Ca.* 237. the court seems to have gone the length of recognizing the doctrine in *Bent* v. *Baker ;* because otherwise it would be in the power of the witness, and even of the adverse party, to deprive the person wanting his testimony of the benefit of it.

It is not necessary to express an opinion, as the case does not exist, whether the illegal compulsion of a witness to testify, is sufficient ground for a new trial.

The other Judges were of the same opinion.

New trial not to be granted.