LINSLEY *against* BROWN.

Where an instrument purporting to be the deed of husband and wife, was first signed by him, and then, in the presence of his wife and by her direction, he put her name to it, without any manual act on her part; after which, they both acknowledged it, in the usual manner; it was held, 1. that this instrument was not legally executed, by the wife, as her deed; and 2. that she was not estopped, by her acknowledgment, from claiming that it was not her deed.

THIS was an action of ejectment; tried at *New-Haven,* *October* term, 1838, before *Williams,* Ch. J.

On the trial, the plaintiff, in support of his title, exhibited a deed, purporting to be duly executed and acknowledged by the defendant, and her husband, then living, but since deceased; and to prove the execution of the deed, by the defendant, the plaintiff called one of the subscribing witnesses, who testified, that he saw the deed signed by the husband, with his own name, and that then, at the request and by direction of the defendant, his wife, he put her name to the deed; after which they both acknowledged the deed, in the usual manner, before a magistrate. To the admission of this deed in evidence the defendant objected, upon the ground that it was not signed by her, with her own hand or mark, as she did not touch the pen; and that so it was not executed according to law. The court admitted the deed in evidence, and instructed the jury, that if these facts were proved, the deed was obligatory upon the defendant.

The plaintiff obtained a verdict; and the defendant moved for a new trial.

*Mix,* in support of the motion, contended, 1. That as the statute requires the subscription of the grantor with her *own* hand, (*stat.* 301, 2. *tit.* 56. *s.* 6.) and this instrument was not so subscribed, but with the hand of *another* person, it was not legally executed, and was not the defendant's deed. The clause requiring the attestation of two witnesses, which is part of the same sentence, is not more explicit. If there has been any contrary practice, it cannot repeal or alter a statute, the terms of which are unambiguous. Nor can the common law maxim, *Qui facit per alium,* &c. have any effect, where the statute says the act shall be done *per se,* and not *per alium.*

2. That if this writing was not legally executed as a deed, it can have no effect as an estoppel. It is the *deed* of the party, which estops—not any subsequent acknowledgment; and if there was no execution, there was no deed.

*C. A. Ingersoll*, contra, contended, 1. That this instrument was legally executed by the defendant. It was subscribed with her own hand, in contemplation of law, when her name was put to it, in her presence and by her direction. *Crary* & al. v. *Stoddard*, decided by the superior court, in 1794, cited 1 *Sw. Syst.* 306. She *adopted* the subscription as her own. The witnesses to a deed seldom see the grantor actually sign it. He calls the witnesses, says to them " this is my deed," and they subscribe. So as to the execution of wills: the testator *adopts* the signature, and the witnesses subscribe.

2. That the acknowledgment of the defendant before the magistrate, was sufficient to estop her from claiming that this was not her own act and deed.

HUNTINGTON, J. The motion states, that the name of the defendant subscribed to the deed under which the plaintiff claims title, was written wholly by her husband, in her presence and by her direction, without any manual act on her part, and that she then acknowledged the instrument to be her free act and deed, in the usual form of such acknowledgments in this state.

The case presents two questions for our determination. 1. Was this deed duly executed according to the requirements of the statute ? 2. Is the defendant estopped, by her acknowledgment, from claiming that the deed was not her own act ?

1. By an act passed in *October*, 1660, it is declared, that after the 1st of *May*, 1661, all grants, bargains, sales and mortgages of houses and lands, shall be in writing, and subscribed by the grantor, with his own hand or mark, unto which mark his name shall be annexed, and also attested by two witnesses, with their own hands or marks, unto which marks their names shall be annexed. The statute of 1672 enacts, that after the 1st of *September*, 1673, all grants and deeds made of houses and lands, shall be acknowledged before an assistant, or commissioner, or justice of the peace, and that no

grant, after the time last aforesaid, shall be accounted completed according to law, but such as are written, subscribed, witnessed and acknowledged as aforesaid.   These provisions have continued substantially the same to the present time. At the revision in 1821, the language was slightly varied, and a new provision introduced relating to the execution of such instruments, by attorney.   " All grants, bargains and mortgages of lands shall be in writing, subscribed by the grantor, with his own hand or mark, unto which mark his name shall be annexed, and also attested by two witnesses, with their own hands or marks, unto which marks their names shall be annexed : or the name of the grantor shall be subscribed to such grant, by his lawful attorney, authorised by a written power for that special purpose, duly executed and acknowledged in such manner as is herein prescribed in case of deeds ; and such subscribing of the name of the grantor shall be attested by two witnesses."   These instruments are to be acknowledged :—" And no grant or deed of land shall be valid, unless written, subscribed, witnessed and acknowledged as aforesaid." The legislature have thought proper to prescribe certain formalities to be observed in the execution of deeds of real estate. If it is said, they are all perfectly arbitrary, (although we think they are highly salutary and useful) it must be admitted, that they are prescribed by competent authority, and must be duly complied with.   We, by judicial legislation, can no more dispense with the subscription by the grantor, than we can declare two witnesses, or an acknowledgment, to be unnecessary ceremonies.

The case before us may be considered, first, with reference to the language of the statute, irrespective of the object it was designed to promote, and the evils it was intended to remedy. The words are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and popular use.   They are plain, explicit and unequivocal. The grantor is to subscribe *with his own hand or mark.*   A person unacquainted with legal maxims, upon reading these words, would no more doubt that the legislature intended that the grantor personally should do some manual act in affixing his signature, than he would doubt that the writer of a letter, in which he states that it is written with his own hand, meant to be understood that it was written with his own natural

hand.    That there might be no uncertainty on this point, the *New-Haven,*
words, " with his own hand or mark," are superadded to the — July, 1839.
word, " subscribed."   The grantor is to subscribe the deed,      Linsley
not by the hand of another, but with his own hand or mark.       *v.*
If the act had provided merely that it should be signed or sub-   Brown.
scribed by the grantor, there would have been some ground
for the construction, that signing the name of the grantor by
an authorised agent would be a compliance with the require-
ments of the statute—a subscription by the agent, being a
subscription by the principal,—applying to the signature, the
maxim *Qui facit per alium, facit per se.*   But when the
mode of subscription is specified ; when the manner is plainly
pointed out ; when it is said the subscription shall be by the
grantor's own hand or mark, there is no room left for construc-
tion.   The statute is then plain and unequivocal.   It is the
fittest course for courts to adhere to the words of a statute, con-
struing them according to their nature and import, in the order
in which they stand in the act.   The plain and obvious mean-
ing is not to be departed from, for the purpose of instituting an
inquiry into the supposed intention of the framers of the law.
Such intention is to be *collected* from the words of the act,
rather than *presumed* from that which does not appear in it.
The law is to be interpreted according to the intention of the
legislature apparent upon its face.   These rules, so eminently
just, are fully established by authority.   *Rex* v. *Inhabts.
of Turvey,* 2 *B. & A.* 520.   *Jones* v. *Smart,* 1 *T. R.* 42.
*Rex* v. *Inhabts. of Ramsgate,* 6 *B. & C.* 712.   *Rex* v.
*Inhabts. of Stoke Damerel,* 7 *B. & C.* 563.   *Rex* v. *Inhabts.
of Great Bentley,* 10 *B. & C.* 520.   *Wilkinson* v. *Leland*
& al. 2 *Peters,* 627.   Their application to the present case is
so obvious, that any comment upon them is unnecessary.

Additional evidence of the meaning of the legislature is
derived from the use of the same words when applied to the
attesting witnesses.   They are to attest the subscription of the
grantor, with their own hands or marks.   It has, certainly,
never been supposed, that an attestation could be made by a
witness, through the medium of another person signing his
name by his direction.   It would not only contravene the
words, but might defeat the object of the law.

If authorities are necessary to sustain the views we have ex-
pressed regarding the true meaning of the statute, reference

being had to its language merely, we think the case is not destitute of those which are analogous. Where a power to lease was to be under hand and seal, and the lease was sealed, but not signed, by reason of the infirmity of the party by whom it was to be executed, it was held invalid. *Blockville* v. *Ascote*, 2 *Eq. Ca. Abr.* 659. This form was required, by the creators of the power, and could be satisfied only by a strictly literal and precise performance. *Hawkins* v. *Kemp*, 3 *East* 410. *Rex* v. *Inhabts. of Austrey*, 6 *M. & S.* 319. *Wright* v. *Wakeford*, 17 *Ves.* 454. S. C. 4 *Taun.* 213. *Doe* v. *Peach*, 2 *M. & S.* 576. *Wright* & al. v. *Barlow* & al. 3 *M. & S.* 512. *Simeon* v. *Simeon*, 4 *Simons* 555.

In actions on bills of exchange and promissory notes, where the pleader has averred, that the instrument was executed by the defendant, his own proper hand being thereunto subscribed, it has been held, by some judges, that an instrument signed by procuration, is inadmissible under a declaration so framed. In *Phelps* v. *Riley*, 3 *Conn. Rep.* 266., *Hosmer*, Ch. J. in giving the opinion of the court, says, "the expression, his own proper hand writing, ties down the allegation to the fact, as much as if it had been averred, that the defendant did the act by his own natural hand." *Pease* & al. v. *Morgan*, 7 *Johns. Rep.* 467. In *Great-Britain*, although there was formerly some diversity of opinion, it is now held, that these words may be rejected as surplusage, not however because they do not import a signature by the party himself, but because not being essential to the validity of the instrument, and consequently, not required by the rules of pleading to be averred, they may be treated as surplusage. The averment that the defendant executed it, is sufficient; and if that be made, the additional words descriptive of the manner of the execution, may be rejected. And they are rejected, because they are unnecessary. *Levy* v. *Wilson*, 5 *Esp.* 180. *Jones* v. *Mars*, 2 *Campb.* 305. 450. *Booth* v. *Grover*, 2 *C. & P.* 335. S. C. *M. & M.* 182.

In the devising clause of the *English* statute of frauds and perjuries, it is enacted, that the will shall be signed by the devisor, or by some other person in his presence, or by his direction. It is said by *Powell*, that the latter part of the clause was inserted in favour of persons, who, by blindness, palsy, or other diseases incident to the human frame, were in-

capable of performing this ceremony themselves.  *Pow.* on
*Dev.* 74. 79. 80. 81. and note 2. by *Jarman.*    Indeed, it is not
easy to perceive why this provision was made, except to meet
the extreme case which might sometimes occur, of a testator
being unable either to write his name or make his mark.    It
would be unnecessary, if the name of the devisor might be
subscribed by another hand, by his direction.    And sealing
only, which is a more solemn act than signing, might, with as
much propriety, be held to be equivalent to signing, and so
a compliance with the statute, as a signature written by a
stranger, be considered as a signing by the testator.    This,
however, would now be held to be insufficient.  *Grayson* v.
*Atkinson,* 2 *Ves.* 458., per Lord *Hardwicke. Ellis* v. *Smith,*
1 *Ves.* jr. 11. per *Willes,* Ch. J.    *Parker,* Ch. Bar. and
*Strange,* Master of the Rolls.    *Wright* v. *Waterford,* 17 *Ves.*
459. per Lord *Eldon.*

It has been urged, that the section of the act, which pre-
scribes the manner in which deeds are to be executed by mar-
ried women, does not contain the words, " with her own hand
or mark ;" and that, therefore, there is no necessity for apply-
ing to such deeds, the rigid rules supposed to be applicable to
deeds executed by others.    In 1723, it was enacted, that the
real estate of a married woman should not be alienable by her
husband's deed, without her consent, testified " by her hand
and seal" to such deed, and acknowledgment of the same be-
fore an assistant or justice of the peace ; and it was declared,
that all alienations of such estate thereafter made, without
such consent, witnessed and acknowledged, should be *ipso
facto* void.    These provisions, with an immaterial change in
the language, made at the revision in 1821, are now in force.
It is to be observed, that this act was passed many years sub-
sequent to the general act regulating the execution of deeds,
and was designed to abrogate a practice, which existed, of hus-
bands conveying the real estate of their wives, without the
knowledge or consent of the latter.    It was not intended to
introduce any new rule as to the *formal* manner in which the
deeds of *femes covert* of their real estate should be executed
by them ; but to abolish the custom which extensively pre-
vailed, which allowed it to be alienated by the deed of the
husband only.    It therefore required her assent to be testified,
by her hand and seal to the deed ; and these words are to

have the same operation, as the words of the act of 1660, "with his own hand or mark." The act of 1723 is to be construed as if it had been incorporated in that of 1660, and the words are to receive the same interpretation. We cannot suppose, that the legislature designed to prescribe one form of execution by married women, and another form by all other persons. Much less can be suppose it was intended to deprive the wife of that protection against fraud and imposition, which the statute had furnished to the husband.

When, therefore, we consult the words of the statute regulating conveyances, and find them so positive and unequivocal, and apply the rule, that they are to be taken in their ordinary signification, and that they express the will of the legislature, which is imperative, and then compare the subscription of the deed under which the plaintiff claims title, with the act, we feel bound to say, that it has not been executed in conformity with the requirements of that act.

The present case, however, requires only the application of a rule, which all the decisions sustain—that a case is embraced by the statute, when it is within the mischief contemplated by the legislature, and also within the plain intelligible import of the words of the act. If then, the spirit of the law be consulted, by considering the object designed to be promoted by it, and the evils it was intended to remedy, we shall come to the same result to which we have been led, when confining ourselves to the language in which it is expressed. We shall find very satisfactory reasons for insisting upon a strict compliance with its provisions. They were all designed to protect the parties and third persons, from the consequences of fraud, perjury and imposition. Parol alienations were prohibited, to prevent titles to real estate from being dependent upon the frail memory of witnesses. The instrument of conveyance was to be subscribed by the grantor, that it might afford evidence that it was his act. It was to be under his own hand, that it might furnish the *best* evidence that it was executed by him. As however it might happen that he could not write, he was permitted to affix his mark to it. It was to be attested by witnesses, for the further security of the parties and all others, from fraud and imposition. It was to be acknowledged, to guard the grantor against fraud and duress. A more perfect system could not probably have been devised, to prevent frauds,

to give stability to our titles to real estate, and to perpetuate the evidence by which they are supported. No part of this system is more important, than that which requires the subscription to the deed to be made by the grantor, with his own hand or mark. No formality required by the act, is more essential than this, to the attainment of the object contemplated by the legislature. The evidence derived from the hand-writing of the grantor, is oftentimes of the highest importance. It affords greater security and certainty than that arising from sealing. It has been correctly said, that as evidence of the actual handwriting of the party affords a more effectual remedy against fraud than the mere impression of a seal, the identity of which may be in itself doubtful, or which, if the identity be proved, may have been made by another without authority, it is impossible to suppose, that the legislature did not mean to require an actual signature. *Smith* v. *Evans*, 1 *Wils.* 313. *Wright* v. *Wakeford*, 17 *Ves.* 458. The legislature could not but have foreseen, that it might become necessary to prove the execution of a deed, otherwise than by the subscribing witnesses. They might be dead, or out of the reach of process, or incompetent to testify, and their hand-writing not be known. The grantor's subscription would, in most cases, furnish the necessary evidence; and therefore, he was required to sign it, with his own hand. The design was, to furnish the best and all the sources of evidence to prove the execution of the deed, under every variety of circumstance, which, it was apprehended, might arise. It is true, that the mark of the grantor does not afford any material testimony; but that mode was allowed from the necessity, which, it was supposed, might, in some cases, exist of adopting it; and should it be admitted, that the deed would be sufficiently signed, if the grantor affixed his mark to it, although he was able to write well, (*Taylor* v. *Dening*, 3 *Neville & Perry*, 228.) yet such a form of signature, in such a case, would rarely be adopted; and whenever it is in this form, the grantee and all who may become interested in the property, receive the deed with this infirmity, (if it may be so called,) apparent on its face. But when the name of the grantor is signed by another, the deed carries a fraud with it, on its face. It purports to have been signed by the party, when in fact it was executed by another. Subsequent purchasers or owners are thus deceived; and those who con-

New-Haven,
July, 1839.

Linsley
v.
Brown.

New-Haven, July, 1839.

Linsley
v.
Brown.

fided in the apparent validity of the instrument, may find them-selves defrauded of their property, by means of a defective deed, which had all the visible qualities of a perfect muniment of title. We can see the wise policy and prudent foresight which created so many guards to the security of property, in the formalities required by our conveyancing act. We are not willing to weaken, much less to destroy, any one of them. The letter and spirit of the act both demand that we should hold this deed not to have been well executed.

It is supposed, that a practice has prevailed in this state, for a considerable period, of executing deeds of real estate in a man-ner similar to the subscription in the case before us; and that it would be dangerous now to disturb it, by a decision which will operate retrospectively. And we have been referred to the authority of Judge *Swift*, as sustaining this practice. In his *Digest*, he says, when a grantor directs another to sub-scribe his name, it is sufficient. 1 *Sw. Dig.* 123. He does not there refer to any precedent; but in his *System*, he says, it has been adjudged, that where the grantor directs an-other person to write his name, or where his hand is guided by another in writing his name, it is a signing of the deed within the statute, and valid to convey the estate; and cites *Crary & al. v. Stoddard,* S. C. 1794. 1 *Sw. Syst.* 306. We have seen no report of this case; nor have we had an opportunity to inspect the record. If it decides only, that when the hand of the grantor is guided by another in subscribing his name, it is a good execution, we are under no necessity to controvert it; for, in the present case, it appears, that the defendant "did not touch the pen," when her name was subscribed by her husband. If it supports the other position stated, we are at liberty to say, it is a single case decided by the superior court, and not binding on this court.

In regard to the practice to which allusion has been made, we are not informed how general it is, nor how long it has existed. We are inclined to the opinion, that it has never prevailed to any considerable extent; and if it has, we can only repeat what we said in *Stone* v. *Stevens,* 12 *Conn. Rep.* 219., and in several previous cases, that no practice, however uniform and extensive it may be, can controul the explicit pro-visions of a statute. If any evils are apprehended as the result of the construction we give to the statute, an effectual remedy

may be provided, by a legislative act, which can be made to operate both retrospectively and prospectively.

2. Does the acknowledgment by the defendant to the magistrate, estop her from claiming that the deed was not her own act? We do not think the law of estoppel has any application to this case. An instrument, which is inoperative as a conveyance, sometimes estops the party from claiming in opposition to it. The covenants of warranty in a deed of land, where the grantor has no title, may preclude him from asserting a subsequently acquired title to the same land. Other cases in which this principle has been applied, might, but need not, be stated. In all such cases, however, the instrument, as to the matter of estoppel, is supposed to be well executed, by the party to be affected by the estoppel. The infirmity does not attach to the execution. *That,* as to him, is admitted to be, in all respects, legal. This was the ground of our decision in *Stow* & al. v. *Wyse,* 7 *Conn. Rep.* 214. Indeed, if there be no such execution of the instrument, as, in contemplation of law, makes it the act of the party, there can be no estoppel as to him. And therefore, if there be such an infirmity in the execution that it is not the deed of the party, so long as the defect remains unaided, no estoppel is created. The acknowledgment does not supersede the necessity of a signature, or the attestation of witnesses. All are prescribed, and an acknowledgment of a deed having no signature, or such an one as the law has prohibited, is as ineffectual to create an estoppel, as the acknowledgment of a deed, having one witness only, or none at all. The acknowledgment by the defendant, therefore, constitutes no estoppel to her claim that the deed was not her own act.

The course adopted by the judge at the circuit, enabled the jury to pass upon the facts in the case, and left the point of law involved in the instruction, for the examination and decision of this court. It is one of considerable importance, and is presented in a form wholly unexceptionable. We have carefully considered it; and a majority of the court are of opinion that the deed of the defendant was not executed in conformity with the requirements of the statute; that in its present state, it is not obligatory upon her, either as a deed conveying the title to the estate, or by way of estoppel; and consequently, that a new trial must be granted.

New-Haven,
July, 1839.

Linsley.
v.
Brown.

In this opinion CHURCH, WAITE and SHERMAN, Js. fully concurred.

WILLIAMS, Ch. J. remarked, that as the statute upon which the question arises, is an ancient statute, and as it received a judicial construction many years since, which had been long acquiesced in; (*Crary* & al. v. *Stoddard*, S. C. 1794. 1 *Sw. Syst.* 306.) and as titles to real estate may have been created under it; he had been disposed to adhere to that decision and that practical construction; but upon looking at the strong language of the statute and hearing the remarks of his brethren, he would not dissent from the result to which they had arrived.

New trial to be granted.