The bill stated that Isaac Jones, of Wilmington, the grand-father of complainants, on the 18th of January, 1826, for the purpose of settling his estate and making provision for his family, and being seized of a large real estate in Delaware and elsewhere, did make, execute
and deliver, a certain deed, whereby for the consideration of one dollar, he granted and conveyed unto David Bush, William Larkin and William Keay, their heirs and assigns, in trust to and for the uses thereinafter declared, certain tracts of land, c., "to have and to hold the same unto the said B. L. K., their heirs and assigns intrust, for the only proper use and behoof of the said Isaac Jones and Sarah his wife, for and during their natural lives and the life of the survivor of them, and upon the decease of the survivor of them, then to and for the only proper use, behoof and benefit of all the children which the said Isaac Jones' son, Isaac H. Jones, then had, or thereafter should have, as tenants in common in fee simple, their heirs and assigns forever; subject, however, to the payment *Page 2 
of $1,000 to each and every of the children which the said Isaac Jones' son, John C. Jones, then had or thereafter might have as follows, c.c., and to each of the children of the said Isaac Jones' deceased daughter, Deborah, in the same manner as to the children of the said John C. Jones, and for no other use, intent or purpose whatever; "which said deed was afterwards duly acknowledged andrecorded: that it is in the custody or control of defendants, or some of them, who refuse to produce it. Isaac Jones died on the 29th December, 1829, no re-conveyance or re-transfer of the property embraced in the deed, having been made to him. Sarah Jones, his wife, died before him. At the time of his death and at the filing of this bill, John C. Jones had four children, (the plaintiffs being two of them.) Isaac H. Jones had three children at that time, two of whom, and the representatives of the third, are defendants. William Larkin and William Keay, two of the grantees in the deed, died in 1829, before the death of Isaac Jones, the grantor. David Bush declined acting as trustee after Isaac Jones' death; and the property went into possession of Weyant, Moore and others, (defendants) as grantees of Isaac H. Jones, who took possession as devisee under an alleged will of Isaac Jones; Isaac Bush, Pennel, Hartley and the other defendants, are claiming as grantees from John C. Jones, claiming that Isaac Jones died intestate, and denying both will and deed.
The bill prayed that the said deed may be established, and the trusts thereof performed and carried into execution by the decree of the court of chancery; that the said David Bush may be compelled to refuse or accept the trust, and in case of his refusal, to convey the legal estate in the property conveyed by said deed, to such trustee as the court may appoint, that the money due complainants under said deed, may be decreed to be raised out of the property thereby conveyed, and for further relief.
The answers admitted the making and execution of the deed, of 1826, but denied that it was ever delivered, its intent being solely to avoid certain liabilities supposed to be incurred by the said Isaac Jones for his son, Isaac H. Jones, (who was his partner as a tobacconist, and who was supposed to have given the' notes of the firm in certain gambling lottery ventures) and to protect his property against his said son's creditors; for which same purpose he executed a deed to Thomas E. Tunis for his Philadelphia property, which was afterwards reconveyed to him. Isaac Jones always considered said deed as a mere form, made for the purposes aforesaid, and so declared to *Page 3 
the trustees; it was kept in his possession, and never was in the possession of, or seen by, either of the grantees, who never accepted the trust, or agreed to act under it none of the persons named or alluded to in it, were present at its execution. Isaac Jones always remained in possession of the estate, and the real objects of the dated were avowed and well understood by all the parties interested. The deed is not in the possession of these defendants, but of one of their counsel, and they do not know how or from whom he got it.
The answer of David Bush, alledged that the deed was never delivered to him, and he never accepted the trust. He believes it remained in the possession of Isaac Jones, who told him he made it for fear of certain liabilities in which his son Isaac H. Jones might have involved him, and to meet that contingency; and it was mere form; and he afterwards told this defendant that the difficulties had not occurred, and the deed was of no effect.
The other defendants denied the execution and delivery of this deed, and pleaded that they are purchasers from John C. Jones, for a valuable consideration without notice.
The chancellor decreed dismissing the complainants' bill.
Extracts from the depositions: —
Isaac H. Jones. — The deed was found in possession of Archibald Hamilton, Esq., after the death of Isaac Jones. William Keay was more intimate with Isaac Jones than Bush or Larkin. Has heard William Keay say, this deed was all a sham. Heard Isaac Jones say, this deed was made for the purpose of securing his property from attachment.
John Elliott. — Bush, Larkin and Keay, were intimate friends of Isaac Jones, Keay the most intimate. Has heard Mr. Hamilton say, he had the deed.
Matthew Kean. — Isaac Jones himself handed this deed to me as recorder, to be recorded, and took it away with him again.
Jonas P. Fairlamb. — Was employed by Isaac Jones to write the deed of trust to Bush, Larkin and Keay, and is the subscribing witness. At the time it was signed it was not delivered, nor do I know that it was ever delivered. I kept it at Jones' request, and for him, for a month or more, and then gave it to him, or left it in the recorder's office to be recorded. At the time of signing the deed, Isaac Jones declared he made it to prevent Pennsylvania creditors of his son from getting his property, but did not say he should retain the deed; and I can't say that he declared the deed was not to be used for any other purpose. He often made this declaration before and after the signing, *Page 4 
as well as at the time the deed was executed, as deeds usually are, when but one party is present, the grantor saying, that he signed, sealed and delivered the deed for the purposes therein mentioned.
David Bush. — The deed was never delivered to me or to Larkin and Keay, that I know of. Isaac Jones applied to me, to suffer my name to be inserted in a deed of trust, with L. K., to secure his Delaware creditors against certain Pennsylvania creditors. Jones promised we should have no trouble. I consented that my name should be used, but never acted under the trust, and never saw the deed; and do not know that L. or K. ever did. Jones told me afterwards that "he had his business settled, and it was all right."
Clayton and Bates, for appellants contended: — 1st. That the deed from Jones and wife, to Bush, Larkin and Keay, was not atrust deed, but an executed use conveying the legal title to the cestuis que use, by force of the stat. of uses. (3 LawLib. 24; Corn, on Uses 56; 20 Law Lib. 49; Watk.Con. 142; 24 Law Lib. 52; Lew. Tr. 102.)
The very object of the statute of uses (27 Hen. 8,) was to execute such a use as this. Modern trusts have grown out of the statute by evasion of it, and no use can operate as a trust that does not avoid the statute. A trust cannot be created without raising a use in the trustees first, and then in the cestuis que use, that is a use on a use; for the statute always executes the first use, no matter what the intention of the party making it, (1 Cruise 411, 453, 460, 165; 2 Blac. Com. 333; 2 Salk. 679, Broughton
vs. Langley.)
Under this deed, Isaac Jones and wife, the grantors, took an estate during their joint lives, and the life of the survivor, with a vested remainder in all their grand-children then in esse; and as to any other children of Isaac H. Jones and John C. Jones, it was a contingent use, dependent upon their coming into existence during the life time of their fathers. The first estate in Isaac Jones and wife, the grantors, is not merely a joint estate, but an anomalous estate peculiar to husband and wife, who are seized in entireties each pertout as well as per my, which neither can sever. Bush, Larkin and Keay the nominal trustees; took nothing, they were the mere conduit pipes, "the lightening rods" through which the legal estate passed instantaneously into the cestuis que use.
Isaac H. Jones, and wife being thus seized of the legal estate under their own deed, there was no necessity for a formal delivery of the deed to Bush, Larkin and Keay, in order to its validity. The retaining possession of it by Isaac Jones himself, so far from being evidence of non-delivery is consistent with the full operation of the *Page 5 
deed; for it was properly in his custody as one of the grantees, to use.
The deed operated, and was so intended, as a family settlement, made by Isaac Jones, and completed as fully as he could complete it, signed, sealed, admitted to be delivered, acknowledged and recorded; but retained in his possession, because he was entitled to it: which is evidence of the delivery.
A voluntary deed in favor of younger children, without a power of revocation, cannot be revoked even by will. (Sear vs.Ashwell, 3 Swanst. Rep. 411, 412; Bolton vs.Bolton, Ib. 414, 415; 2 Vern. 402; Clavering vs.Clavering.)
If this were a trust deed, as it has heretofore uniformly been considered, it was fully executed and is valid. The acknowledgment and recording of a deed, is not only prima facie evidence, but conclusive evidence of delivery. (16 Peters' Rep. 106, 118, Tompkins
vs. Wheeler; 30 Law Lib. 122; Shep. Touch. 57-8; 3Swanst. 411-12; 5 B. Cress. 671; Dig. 90, sec.2; 2 Harr. Rep. 200. The act of recording, put the deed in the custody of the law, for purposes inconsistent with any idea that it was not a perfect deed; and to that extent out of the grantor's power. The record is evidence of the delivery without other proof.
The facts that prove the delivery and the intention that it should operate are — 1st. Jones consulted Bush, and obtained his consent to act as trustee. 2d. He procured the deed to be drawn and signed, sealed and said he delivered it as his deed for the uses and purposes therein mentioned. 3d. He acknowledged it as his deed, before judge Way. 4th. A month after, he had it recorded as his deed, and without qualification, and 5th. It was afterwards found out of his possession, among Mr. Hamilton's papers.
Rogers, jr. and Wales, for the appellees contended: — 1st. That this was not an executed use, but a special trust excepted out of the statute, and which it will not execute; as among other things for raising these annuities. (Lew. on Trusts, 53.)
2d. The position that this is not a trust deed but an executed use, is a new case, not made by the bill nor in the argument below; and the appellants have no right to such relief. The bill states a case oftrust; claims that Bush et al. are trustees; prays the execution of the trust, and a conveyance of the trust estate by Bush. No relief can be had under the general prayer, unless consistent with the case made by the bill. (2 Harr. Rep. 400, Kibler'sAdm'r. vs. Whiteman's *Page 6 Ex'r.; 3 Ibid 139, Bayard vs. M'Lane; 2 Mad. Ch.
171; 12 Vesey, 47-8.)
3d. The relief now sought is not the subject of equity jurisdiction. The case now made, is that of a legal estate in the grandchildren of Isaac Jones subject to the legacies of complainants. The demand is a legal one, and should be enforced at law. (1 Mad. Chy.
445-7-50.)
4th. This was never the deed of Isaac Jones for want of delivery. However it is to operate, it cannot be his deed without delivery, nor this without his intention. The proof is full that he never intended to deliver it; that it was prepared for a special purpose, for which it was never required. If it had even been delivered for this purpose, it could not be set up for any other. (2 Atk. 257.) There was no delivery, and no intention to deliver the deed. The formal execution and acknowledgment before the judge, though prima facie evidence of delivery, are fully explained. The recording has no effect to strengthen the execution if that is defective; it is the act of a ministerial officer; and, indeed, a lawful act only, after a complete execution and delivery. The record is prima facie evidence without proof of execution, but not against proof of non-delivery. (10Mass. Rep. 462; 12 Ib. 456; 13 Conn. Rep. 192; 9East 360; 1 Harr. Gill. 175, 181; Pet. C. C. Rep.
188-9; 6 Cow. 619; 2 Wend. 317; 6 Pet. Sup. C. R.
598, 605; 10 Ibid 596; 2 Harr. Rep. 197, 501.)
5th. This is no deed of settlement, being for only a part of Jones' estate, and for an avowedly different purpose. As a settlement deed it would be ineffectual without full proof of execution; and, on such proof if the party kept possession of the deed, intending tocontrol the dispositions in it, he may revoke it. The case ofClavering and Clavering, has been much restrained. (1P. Wms. 577; 2 Ibid 359.) The court never carries into execution a voluntary instrument of conveyance for the benefit of children imperfect in itself. There must be proof of a complete instrument. (1 Johns Ch. Ca. 240; 3 Swanst. 411; 12Com. L. Rep. 351; 12 Chy. Rep. 39 Antrobus vs.Smith.)
 Frame, in reply. — 1. The trusts of this deed are not special. The money is not to be raised by the trustees, but the land is conveyed subject to the legacies. The wife's estate is not such unless vested in the trustee for her separate use. It is a plain conveyance of the land to B. L. and K., in trust for the cestuis que use, and this is an executed use and not a trust. (Lewen on Trusts
193-53; 1 Cruise 165; 2 Ld. Ray. 873-8.)
2. This is not a new case, but a new aspect of the old case. It *Page 7 
is fully embraced within the relief sought. The particular operation of the deed is of no consequence to these complainants, and they are not bound to plead it with technical accuracy. Whether a trust deed or a deed passing the legal estate under the statute of uses is indifferent to their claim, which is for the legacies charged on the land so conveyed. No matter what the deed is called by the pleader, the court will name it and give it effect according to its legal force.
3. There is no adequate legal remedy for these legacies. Supposing assumpsit would lie against the holders of the land charged, how could the amount be apportioned? If that were possible it would not exclude the remedy in equity, which has peculiarly the jurisdiction of sums charged on land. Nor are we bound to pursue a personal remedy constantly shifting; we may come here to enforce the charge against the land. And we are here also for a discovery and production of the deed.
Chief Justice Booth delivered the opinion of the court.
The complainants' case as presented by the bill, seeks to establish this deed as a trust deed, and to have the trustsexecuted by David Bush, the surviving trustee, or by some other person to be substituted in his place, for the purpose of raising the money charged on the land so conveyed in trust for the benefit of complainants who are children of John C. Jones. The bill prays this relief specifically. The answers were designed to meet this case and no other. They deny the trust. Upon the case thus presented below the chancellor decreed, dismissing the complainants' bill, upon the ground that no trust such as a court of equity will execute, had been established. On the appeal, the complainants make an entirely new case; abandoning the whole ground taken by them below, denying the trust altogether, and claiming a relief certainly not prayed by the bill, unless it can be granted under the general prayer. On this ground alone we think we should have to affirm the chancellor's decision, dismissing the bill.
2d. But whether this deed was a trust deed or an executed use under the statute, its delivery to the grantee was equally necessary; and the intention to deliver was equally necessary in the one case as the other. The delivery of a deed is a question of intention, and all the formalities of signing, sealing, acknowledging and even recording are subject to this intention, when made clearly to appear. Now although Isaac Jones executed this deed in the usual manner, acknowledged it, and had it recorded, it is clearly proved that he never intended to make it his deed, except under a certain contingency *Page 8 
that never happened. The proof does not leave this in any doubt.
This also is an application to a court of equity, to enforce a deed for a purpose entirely opposed to the intention of the person whose deed it is alledged to be; and to make it a deed, though it clearly appears to us that the party never intended it should be his deed, except in circumstances which never in fact happened.
On both these grounds we affirm the decree of the chancellor, dismissing the complainants' bill, with costs.
 Decree affirmed.