MARGARET D. NELSON v. DR. J. H. RHEM ET AL., TRUSTEES, ETC.

(Filed 10 March, 1920.)

**Contracts— Lands— Sales— Consideration—Bonds—Face Value—Market Value.**

A contract for the sale of lands "payable one-half in cash and one-half in Liberty Bonds" contemplates the acceptance of the bonds by the purchaser at their face value, and not according to their market value at the time, the latter interpretation having the effect of changing the express terms of the agreement, which the courts may not do in the absence of allegation or proof of fraud or mistake.

APPEAL by plaintiff from *Kerr, J.,* at the November Term, 1919, of CRAVEN.

This is an action to recover balance due on a contract for the purchase of a house and lot, tried on the following agreed facts:

"1. The plaintiff agreed to convey to the defendants a certain lot in the city of New Bern upon the payment of forty-two thousand five hundred dollars ($42,500), payable one-half in cash and one-half in Liberty Bonds.

"2. The plaintiff contends that she was to receive enough bonds at the market price to cover the $21,250, and the defendants contend the plaintiff was to receive bonds of the par value of $21,250.

"3. The defendants at the time of said contract had on hand bonds of the various issues that they had bought while the drives were on by the Government for the sales of the bonds and tendered the par value in said bonds.

"4. The difference between the par value and the market value of said bonds on 17 November, 1919, is considerably above $500, and the parties, by agreement, decided that the deed should be delivered, and that the cash part of the payment should be made, and that the $21,250 per value of bonds so tendered should be delivered, and that the question as to whether the test should be the par value or the market value should be submitted to the court, and if the court was of opinion that the market value was the test, it should render judgment for $500 and the costs in favor of the plaintiff, and that the defendants should pay to the plaintiff the actual difference, with the interest thereon from 17 November, 1919, which is much in excess of the $500, regardless of the fact that the judgment was only $500.

"5. The deed and the cash payment and the delivery of the par value of bonds have been complied with, and the parties submit to the court in this action the question as to the liability of the defendants to the plaintiff for the excess of the par value above the market value on 17 November, A.D. 1919, and agree that the rights of the parties depend upon the foregoing agreed facts."

His Honor held that the contract to pay $42,500, one-half in cash and one-half in Liberty Bonds, meant Liberty Bonds of the face value of one-half of the purchase price, and rendered judgment against the plaintiff, who excepted and appealed.

*R. A. Nunn and Ward & Ward for plaintiff.*
*Moore & Dunn for defendants.*

ALLEN, J. The contract of the defendant is to pay $42,500, "payable one-half in cash and one-half in Liberty Bonds," and if we were to adopt the construction of the plaintiff we would strike out of the agreement of the parties the terms of payment, leaving an unqualified promise to pay $42,500, as this would be the effect, if "one-half in Liberty Bonds" means the market value of the bonds.

The phrase "one-half in Liberty Bonds" means nothing if not bonds on their face, promising to pay $21,250, one-half the purchase money, and we have no right to change the contract, in the absence of allegation or proof of fraud or mistake, nor can we assume that the parties have inserted meaningless terms in their agreement.

NELSON v. RHEM.

In *Smith v. Dunlap*, 12 Ill., 189, the contract was to pay $131,480.52 in the indebtedness of the State of Illinois, and the Court says of the construction of the contract: "Where the promisor undertakes to pay a certain number of dollars in specific articles, such as grain, cattle, or other commodities, he must deliver the property on the day named in the contract, or he becomes absolutely bound to pay the sum stated in money. The sum expressed in the obligation indicates the true amount of the debt; and the other provisions is inserted for the benefit of the debtor, and relates exclusively to the mode of payment. If he does not avail himself of the privilege of discharging the debt in property, the obligation becomes a naked promise to pay the amount in money. But where the promisor agrees to pay a certain sum in bank notes, or other evidence of indebtedness, which purport on their face to represent dollars, and can be counted as such, the sum is expressed to indicate the number of dollars of the notes or evidence to be paid, and not the amount of the debt or consideration. The obligation is in fact but a promise to deliver so many dollars, numerically, of the securities described. If the debtor fails to deliver them according to the terms of the contract, he is responsible for their real, not their nominal value. Their cash value is the true amount of the debt to be discharged. And beyond the damages directly resulting from the breach of the contract, the creditor is not entitled to recover.

"The contract in question falls directly within the latter definition. It is an undertaking to pay a given number of dollars of the indebtedness of the State of Illinois. This indebtedness consists of obligations issued by the State, for the payment of specified sums of money to its creditors. The amount in dollars is expressed on the face of the instruments, and can be at once ascertained by inspection.

"In *Clay v. Houston's Admrs.*, 1 Bibb., 461, the expression in a note, 'thirty pounds in militia certificates,' was construed to mean that number of pounds in certificates as specified on their face, and not an amount of certificates equal in value to thirty pounds in specie. In *Anderson v. Ewing*, 3 Littell, 245, a note for the payment of 'eight hundred dollars, on or before 1 September, 1820, in such bank notes as are received in deposit at that time in the Hopkinsville Branch Bank,' was held to be a contract to pay eight hundred paper dollars of the description mentioned. The Court said: 'It is true, an instrument drawn, stipulating the payment of a certain number of dollars in cattle, wheat, or other commodities, is construed to mean so much of these articles as will amount to that sum in specie. But the reason of this is evident. The commodities themselves cannot be counted by dollars, as the name is never applied to them. But this is not the case with bank notes. They engage to pay so many dollars, and are numerically calculated by the

numbers they express; so that the expression "eight hundred dollars in bank paper" is universally understood to mean that much money, when the numbers expressed on the face of the note are added together, and not as including so many more, superadded, as will make them equal to eight hundred dollars in specie.' In *Phillips v. Riley,* 3 Conn., 266, a note for 'eighty-eight dollars in current bank notes, such as pass in Norfolk between man and man,' was decided to be a contract to pay banknotes of the kind described, to the nominal amount of eighty-eight dollars. In *Robinson v. Noble's Admrs.,* 8 Peters, 181, in an action on an agreement to pay freight at the rate of one dollar and fifty cents per barrel, 'in paper of the Miami Exporting Company, or its equivalent,' the Court held that the specie value of the paper, when the payment should have been made, was the proper measure of damages. In *Hixon v. Hixon,* 7 Humphrey, 33, a note for 'one hundred dollars, in Georgia, or Alabama, or Tennessee bank notes, or notes on any good man,' was decided to be an obligation for the payment of that many dollars of the notes specified. In *Gordon v. Parker,* 2 Smedes & Marshall, 485, a note for 'five thousand dollars, payable in Brandon money,' was determined to be a contract to pay that number of dollars of the kind of money described. In· *Dillard v. Evans,* 4 Pike, 175, the Court held a note payable in the 'common currency of Arkansas' to be a contract to pay so many dollars of the bank paper then current in the State."

Also, in *Easton v. Hyde,* 13 Minn., 90, speaking of a similar contract: "But a dollar·is the measure of the value of U. S. bonds, so that the expression, payable 'in U. S. bonds,' is as universally and clearly understood as would be the expressions payable 'in bank bills,' 'in U. S. Treasury notes,' or 'in gold coin.' If these parties had intended that the bonds should be received at any other than their nominal value, they doubtless would have so provided in the contract."

The same principle is declared in *Lackey v. Miller,* 61 N. C., 27, in which the contract was to pay $71·"in current bank notes," of which *Pearson, C. J.,* says: "In our case the promise is, not to pay seventy-one dollars in United States coin, which may be discharged by paying enough current bank money to make up.that amount in good money, but to pay seventy-one dollars 'in current bank money,' *i. e.,* seventy-one current bank money dollars; in other words, current bank bills calling on their face for ·seventy-one dollars, in the same way as where one promises to pay seventy-one dollars *in currency,*·the meaning is to pay current notes calling on their face for seventy-one dollars, as distinguished from seventy-one dollars in United States coin, or, as is termed, 'in good money.'

"Any other construction of instruments like these would lead to the absurdity of supposing that the same words amount to a promise to pay in United States coin, *i. e.,* good money, and also to a promise to pay in

'current bank bills,' which are not good money; whereas, it is perfectly clear that the party intends to admit a debt of a given amount, not in United States coin, as in the case of *Hamilton v. Eller,* 33 N. C., 276, but only in current bank bills, *e. g.,* seventy-one current bank money dollars, or current bank bills, calling on their face for seventy-one dollars."

We are therefore of opinion on reason and authority that his Honor properly held that the plaintiff could not recover, as the defendant has paid to the plaintiff $21,250 in cash, and delivered Liberty Bonds of the face value of $21,250, which is all the defendants agreed to do.

Affirmed.