## KIRTLAND *vs.* MOLTON.

[ACTION ON PROMISSORY NOTES, BY PAYEE AGAINST MAKER.]

1. *Measure of damages.*—In an action on several promissory notes, payable on their face in Confederate currency, in February, April, and June, 1865, the measure of damages is the value of the specified currency at the maturity of the notes respectively.

2. *Ordinance No. 26, adopted 28th September,* 1865, *as to parol evidence showing consideration of contracts, and measure of damages for breach; construction and validity of.*—The first clause of the third section of ordinance No. 26, adopted by the State convention on the 28th September, 1865, (which provides that, "in all suits upon contracts made between the 1st September, 1861, and the 1st May, 1865, parol evidence shall be admissible to prove what was the consideration thereof, and whether or not the parties thereto understood or agreed that the same should be discharged by a payment in Confederate currency or treasury-notes,") simply changes a rule of evidence, and is not violative of the constitutional provision against laws impairing the obligation of contracts ; but the residue of that section, (which is in these words : "and if so, or if it appears so from the contract, then to show what was the real or true value of the consideration of the said contract, and what amount the plaintiff is legally, justly, and equitably entitled to receive according to the contract, by the judgment of the court,") so far as it would affect the measure of damages for the breach of an express contract, and make the value of the consideration an element in determin-

Kirtland v. Molton.

ing the damages for a breach, is violative of the obligation of such contract, and is, therefore, unconstitutional and void. (BYRD, J., *dis-senting*, held the entire section of the ordinance nugatory and void, unless it was simply intended to authorize the reformation of contracts at law, without the necessity of resorting to a court of equity ; and he doubted whether that was the intention of the framers of the ordinance.)

3. *Validity of contract made within Confederate States during late war, and payable in Confederate currency.*—Held, on the authority of *Scheible v. Bacho,* (*ante,* p. 423,) that a promissory note, executed in Alabama, in December, 1864, and payable on its face in Confederate currency, is not illegal and void, and that an action may be maintained for a failure to pay such note at maturity.

APPEAL from the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.

IN this case, three separate actions were brought by Charles H. Molton, against Sidney Kirtland ; all being commenced on the 16th January, 1866, and each being founded on a promissory note. Each of the notes was executed by the defendant, dated the 8th December, 1864, and payable to C. H. Molton or order ; one being for seven thousand, four hundred and thirty-three dollars, payable sixty days after date, "in currency, value received, with interest ;" one for six thousand dollars, payable four months after date, "in currency C. S., with interest ;" and one for six thousand dollars, payable six months after date, "in currency C. S., value received, with interest." At the June term, 1867, the three cases were consolidated, on motion of the defendant ; and a trial was had at the ensuing November term, 1867. The record does not show what pleas were filed. On the trial, as appears from the bill of exceptions, the plaintiff offered in evidence the three notes on which the action was founded ; and they were admitted by the court, against the defendant's objection, although no United States internal-revenue stamp was affixed to them, nor any excuse shown for the failure to affix such stamp ; to which ruling of the court an exception was duly reserved by the defendant.

"The testimony conduced to show," as the bill of exceptions further states, "that the notes were given to be paid in treasury-notes of the Confederate States, or of the State

of Alabama, which latter notes were redeemable on their face in Confederate States treasury-notes; that the commodities purchased were at Confederate prices, and, in many cases, were priced at more than ten-fold their value in good money; that part of the consideration was a lot of hogs, priced in gross at $1 37½ per pound, when their value in good money was from five to eight cents per pound; and a lot of goats, priced at $30 per head, when their value in good money was from seventy-five cents, to a dollar and fifty cents per head. There was proof of the value, in good funds, of the articles sold, and of the value in coin and in ' *green-backs*,' or United States currency, of Confederate currency at the several times when the three notes matured. When the plaintiff offered proof of the value of the articles sold, the defendant admitted that such proof was legal, to be weighed by the jury in determining whether the notes were to be paid in Confederate money; but [he insisted] that such proof could not be weighed by the jury in determining the measure of the plaintiff's recovery, further than to aid them in determining that the contract was to be paid in Confederate money; and the defendant asked the court to instruct the jury as above, and excepted to the refusal of the court to do so. There was no evidence of the value of any article or commodity, save those which were the consideration of the notes sued on.

"The court charged the jury as follows: 'The law of this case is governed by the third section of the ordinance of the State convention of 1865, which is as follows:' [See the section copied in the opinion of C. J. WALKER.] ' Courts of law do not enforce the performance of contracts, but give damages for the breach; and in the absence of this ordinance, the general rule of damages would have prevailed—to-wit, the money value of the article to be delivered, at the time of the breach. In all contracts to be discharged in Confederate money, falling due towards the close of the war, the damages would have been almost nominal, owing to the depreciation; and if falling due afterwards, none whatever. Further, in the absence of this ordinance, the rule of evidence which makes the writing the sole expositor of the contract, would have pre-

Kirtland v. Molton.

vailed; and thus written contracts, expressed on their face, in general terms, to be discharged in dollars and cents, but which, in the contemplation of the parties, really meant Confederate currency, would have to be paid in the constitutional currency of the United States. To prevent results so unexpected and unjust, this ordinance was adopted. It makes evidence admissible, in this class of contracts, to prove the value of the consideration; thus throwing a hitherto foreign element into the admeasurement of damages, and virtually abrogating the general rule. It expressly abrogates, also, the rule of evidence before mentioned, which prohibits the introduction of verbal testimony to vary a written contract; and testimony is not only admissible to show that the contract was to be discharged in Confederate money, and to prove the value of the consideration, but also to show what amount the plaintiff is legally, justly, and equitably entitled to receive, according to the contract; thus letting in evidence of every matter, which might, in the remotest degree, tend to explain the transaction. Such evidence is not made admissible, merely to be discarded. It is argued, that the proper measure of damages is the value of the consideration at the time of the contract. The ordinance was adopted, doubtless, after much deliberation; and if such had been the intent of its framers, it would not have been left to implication. Besides, the effect of this rule would be to disregard entirely the terms of the contract, in fact to annul it, by requiring the promisor to relinquish the benefit of his bargain, and to pay the exact value of what he received; thus placing the parties *in statu quo*. The convention had no power to do this. The ordinance does not substitute any measure of damages, that I can discover, for the one abrogated; owing, no doubt, to the difficulty of prescribing any fixed rule, which would not do injustice in a majority of these cases. If you are satisfied that it was understood, or agreed, that the contract should be discharged in Confederate currency, or treasury-notes, you will inquire what was the real or true value of the consideration; and then, looking at and duly weighing all the facts and circumstances in evidence, you will ascertain by your verdict what

amount the plaintiff is legally, justly, and equitably entitled
to receive, according to the contract. In arriving at 'the
real or true value of the consideration,' (in the language
of the ordinance,) you will not confine yourselves to the
standard of gold or silver, but ascertain it by a fair com-
parison of full values at the time the contract was made.
You are not to discard from your consideration the terms
of the contract. It was not the object of the ordinance to
annul or impair its obligation, but to furnish reparation for
its breach, 'legal, just, and equitable;' not according to the
general rules of damages and evidence, before referred to,
for these, in the anomalous condition of things, would cut
like a two-edged sword, in many cases giving exorbitant
damages, and in others of the same character, though
slightly differing in circumstances, no damages at all; but
reparation, graduated by the intelligence and experience of
the juries of the country, guided and enlightened by every
circumstance which might possibly shed light on the par-
ticular transaction.'

" The defendant excepted to this charge, and also excep-
ted separately to that part of it which relates to the measure
of damages; and then requested the court, in writing, to
give the following charges to the jury: [1.] 'That the
value of the property sold is evidence before them, on the
question whether the parties agreed, or understood, that
the notes were to be paid in Confederate currency; but, if
this fact is established, then the value of the property sold
cannot be looked to in fixing the measure of the plaintiff's
recovery.' [2.] 'That if the jury find, from the evidence,
that by the word *currency*, as employed in one of the notes
sued on, and the expression *currency C. S.* in the other
two, the parties intended and agreed that the notes were
to be paid in Confederate treasury-notes, or Alabama
State treasury-notes, then the measure of damages is the
value of such treasury-notes,in money current by the laws of
the United States, at the time the notes severally fell due,
with interest upon such value.' [3.] 'That if the jury find,
from the evidence, that the demands sued on were, by the
terms of the contract, to be paid in the treasury-notes of
the (so-called) Confederate States of America, then they

Kirtland v. Molton.

must find for the defendant.' [4.] ' That a contract for the payment of Confederate money, made at Montgomery, Alabama, on the 8th December, 1864, cannot be recovered upon.' The court refused each of these charges, and the defendant excepted to their refusal."

The several rulings of the court to which, as above stated, exceptions were duly reserved by the defendant, are now assigned as error.

STONE, CLOPTON & CLANTON, for appellant.—1. For the breach of a contract to pay uncurrent money, or to deliver specified articles, the measure of damages is the value of the thing promised to be paid or delivered, at the time of the breach, with interest on that value. This rule has been repeatedly recognized by this court, and it is of universal application.— *Wilson v. Jones*, 8 Ala. 536 ; *Jolley v. Walker*, 26 Ala. 690. The fact that the article promised to be paid or delivered changes in value between the making of the contract and the breach, makes no difference in the application of the principle. It may quadruple in value, or diminish to nothing, without affecting the principle. In making their contracts, parties exercise their own judgment and discretion, and assume all the risks of appreciation or depreciation in the value of the article bought or sold, or contracted to be paid or delivered at a future day ; and it is not in the power of the courts, or of the legislature, to deprive a party of the benefits of his bargain, if honestly and fairly made. The injury actually sustained by the breach of a contract, is the measure of damages for that breach. If the breach consists in the non-payment of Confederate money, or any other article current or uncurrent as money, the value of that money or currency at the time of the breach is the injury actually sustained, and is, consequently, the measure of damages. See, also, *Dutch v. Warren*, cited in 2 Burr. 1011–12 ; *Valpey v. Oakley*, 16 Queen's Bench, 941.

2. The ordinance (No. 26) adopted by the State convention on the 28th September, 1865, so far as it attempts to substitute a new rule for the admeasurement of damages

36

in such cases, by making the value of the consideration an element of the damages, is violative of the constitutional provision, State and Federal, against laws impairing the obligation of contracts. The prohibition of the Federal constitution is against the States, and not against their respective legislatures only; and it applies to the ordinances of a State convention, and to ordinary legislative enactments, with equal force.—*Dodge v. Woolsey*, 18 How. 331.

The ordinance must, therefore, be construed, and its validity must be tested, by the same rules and principles which govern the construction and validity of ordinary statutes. The simple question presented, then, is, whether the measure of damages for the breach of antecedent contracts can be changed by legislation. The "obligation of a contract," within the meaning of the constitutional prohibition, may be defined as consisting in those duties and liabilities which are imposed on the contracting parties, by the law which is in force at the time of the making of the contract, as the legal result of the terms of their contract.—See the phrase defined, in *Sturges v. Crowningshield*, 4 Wheaton, 122; *Ogden v. Saunders*, 12 Wheaton, 257; *Bronson v. Kinzie*, 2 Howard, (U. S.) 311; 2 Parsons on Contracts, ch. 10, § 6, and notes. In the language of WALKER, C. J., in *Ex parte Pollard*, (40 Ala. 77,) "The prohibition of the constitution is as to the *impairment* of the obligation, which must not be confounded with *destruction:* it may be impaired, and yet not destroyed. * * * The obligation is impaired, when it is made worse; diminished in quantity, value, excellence, or strength. The objection to a law can never depend on the extent of the change which the law effects in it." Tested by these authorities and principles, it is impossible to resist the conclusion, that the third section of said ordinance does impair the obligation of contracts, and is, therefore, unconstitutional and void. To uphold the ordinance, and to sanction the measure of damages which it attempts to establish, would break down the distinction between express and implied contracts, and would even place different express contracts on the same footing. One purchaser may have promised to pay one thousand, and another one hundred dol-

lars, for articles of the same actual or intrinsic value ; and yet, under the rule established by the ordinance, the measure of damages for a breach would be the same in each case.

3. The argument against the measure of damages which the third section of said ordinance attempts to establish, does not involve the validity of that portion of the third section which relates simply to the admissibility of oral evidence to show the consideration of such contracts. If part of the ordinance be constitutional, and part unconstitutional, and the two parts can be separated from each other without impairing their effect, or garbling their meaning, it is the duty of the courts to let the constitutional clauses stand.—*See Sadler v. Langham,* 34 Ala. Rep. 334, and authorities there cited. That portion of the section which authorizes the admission of oral evidence, to show the consideration of contracts, is plainly separable from the residue of the section, and is not obnoxious to any constitutional objection. It is, however, unnecessary, since it does not in any manner change or affect the general principle of law which would prevail without its aid ; and it is immaterial, therefore, whether that portion of the ordinance be allowed to stand or fall. The word *dollar* is a generic term, having a different meaning in different countries. A dollar in Spain or Mexico has a different value from a dollar in the United States ; and a dollar in the late Confederate States, during the existence of its *de-facto* government, had still another value. If an action were brought in the courts of the United States, on a contract made in Spain or Mexico, and payable on its face in dollars, parol evidence would be admissible, to show the value of a Mexican or Spanish dollar in currency of the United States ; and so, where a contract was made in the Confederate States, and is payable in dollars, parol evidence would be received to show the value of a Confederate dollar in the present currency of the United States. Such evidence is received on the principle of latent ambiguity: the rule being, that parol evidence is always competent to relieve a difficulty, or to solve an ambiguity, which is caused by oral evidence. It is but applying the contract to the subject-matter.

WATTS & TROY, with whom was J. FALKNER, *contra.*—
1. The ordinance of 28th September, 1865, gave the defendant the right to prove by parol evidence, contradicting the legal interpretation and construction of his contract, what was to be paid by understanding or agreement of the parties; and, as compensation for this right granted to the defendant, allowed the plaintiff to prove the value of the consideration, and permitted the jury to allow him this value. If the defendant avails himself of the right thus given to him, he must take it *cum onere:* he must take it in connection with the correlative right of the plaintiff to have a recovery for the actual value of the consideration—of the thing bought and sold. The defendant might have stood on the terms of his contract, and was not compelled to accept or invoke the aid of the ordinance; but, having invoked the aid of the ordinance, and having accepted the benefits conferred by its provisions, he can not complain of the burden with which the benefits are coupled. In this view, the plaintiff's right to recover the value of the thing sold, with interest, " according to the contract," becomes a matter of consent on the part of the defendant. He takes a benefit, coupled with a burden, and can not complain. The maxim applies, *Volenti non fit injuria.*

2. The convention of 1865, by which the ordinance in question was adopted, declared the ordinance of secession, by which Alabama, on the 11th January, 1861, dissolved her relations with the United States, to be null and void; in other words, declared that Alabama had never been out of the Union—that she had been, during the whole war, under the constitution and laws of the United States; that all acts on the part of her citizens, in contravention of the laws and constitution of the United States, (unless they had become *faits accompli,)* were likewise void; and that all executory contracts, made in aid of the Confederate States, or opposed to the laws or policy of the United States, were equally void, and incapable of enforcement through the legal tribunals of the country. All such contracts, in the view of the convention of 1865, were simply null and void, and imposed no legal obligation on the parties. The law will imply no promise to pay the value of the thing bought

under a void contract, though a recovery might be had under an express promise.—*Dodson v. Harris*, 10 Ala. 566, and authorities there cited. Seeing the injustice which would inevitably result, to one or the other of the contracting parties to subsisting (but unexecuted) contracts, under this view of the law, the convention undertook to provide a remedy. To allow a recovery for three thousand dollars, on a promissory note given for a horse or a mule ; or to refuse any recovery on a note for twenty thousand dollars, given for the purchase of land intrinsically worth one or two thousand dollars in good money, was such manifest and shocking injustice, that the convention felt the necessity of providing a remedy; and that remedy is expressed and embodied in the ordinance of September 28th, 1865. It is, to allow a recovery, as on an implied contract, for the actual value of the thing sold and delivered. Thus construed and interpreted, the ordinance is not violative of the obligation of contracts, and is not obnoxious to objection on any other constitutional ground. The constitution of the United States does not prohibit the States from enacting any retrospective or retroactive law, unless such law is *ex-post-facto*, or unless it impairs the obligation of valid, subsisting contracts. These are the only two exceptions or prohibitions engrafted by the constitution on State authority.—*Satterlee v. Mathewson*, 2 Peters, 380, 411 ; *Watson v. Mercer*, 8 Peters, 88. The ordinance simply creates or declares the relation of debtor and creditor, as on an implied contract, where no valid contract—in other words, no contract at all—previously existed. The case is not distinguishable, in principle, from that of *Satterlee v. Matthewson*, (*supra*,) in which the validity of a State law, creating and declaring the relation of landlord and tenant between the parties to a lease, which had been declared void, was sustained. It is a solecism, a contradiction in terms, to say that a law which creates or declares an implied contract, where no contract at all existed, violates or impairs the obligation of any contract.

3. The agreement to receive currency, or Confederate money, in payment of the notes, was for the benefit of the defendant. To entitle him to claim the benefit of that

stipulation, he ought to have pleaded a tender of that cur-
rency, and show a compliance on his part, or an offer to
comply, with the alternative stipulation.—*Plowman v.
Riddle*, 7 Ala. 775; *McRae v. Raser*, 9 Porter, 122; *Arm-
srong v. Tait*, 8 Ala. 635; *Love v. Simmons*, 10 Ala. 113;
*Nesbit v. Pearson*, 33 Ala. 668.

A. J. WALKER, C. J.—This action is founded upon
three promissory notes, dated the 8th December, 1864; one
payable in February, one in April, and the other in July,
1865.   There was proof conducing to show, that it was un-
derstood and agreed between the parties that the notes
should be discharged by a payment in Confederate curren-
cy.   The material question presented in the case is, what
is the measure of damages for the breach of the contract
of payment of the respective notes, a part of which became
due before the overthrow of the Confederate government
in Alabama, when the Confederate currency was worth
something, and a part became due afterwards, when such
currency was worthless as money.   The question is to be
determined in reference to both classes of contracts.

The third section of the ordinance of the convention,
adopted the 28th September, 1865, (Revised Code, 59,) is
in the following words :   " In all suits upon contracts made
between the first of September, 1861, and the first of May,
1865, parol evidence shall be admissible, to prove what
was the consideration thereof, and whether or not the par-
ties thereto understood, or agreed, that the same should be
discharged in Confederate currency, or treasury-notes ; and
if so, or if it appears so from the contract, then to show
what was the real or true value of the consideration of the
said contract, and what amount the plaintiff is legally,
justly, and equitably entitled to receive, according to the
contract, by the judgment of the said court."

In the case of *Tarleton v. Southern Bank*, at the present
term, it was contended, that the section of the ordinance
above quoted impaired the obligation of written contracts,
in authorizing the admission of parol evidence of an agree-
ment or understanding for the discharge of the contract in
the specified currency.   This court overruled this proposi-

tion, maintaining the constitutionality of the clause authorizing the admission of such evidence, upon the ground that it merely swept away a rule of evidence, which the policy of the law prescribed, and which prevented the ascertainment of the real and true obligation of the contract through the agency of parol evidence. In that point of view, the clause did not impair the obligation of the contract, but facilitated its ascertainment. The supreme court of North Carolina, in *Woodfin & Patton v. Erwin Sluder*, at its January term, 1867, decided the same question, as this court has done.

The decision in *Tarleton v. The Southern Bank,supra*, vindicates the constitutionality of the clause, upon the ground that the stipulation as to the currency in which payment was to be made was really a part of the contract, and that the ordinance only removes a difficulty in the way of proving the fact that it was a part of the contract. The notes, if the jury believe that the understanding or agreement stated in the ordinance is proved, are to be read as if they were promises to pay so many dollars in Confederate currency.

The measure of damages, for a failure to fulfill such a contract on the part of the promisor, is, and has long been, well established in this State ; and the rulings of this court upon the subject are in harmony with the decisions generally in the United States.—*Jolley v. Walker*, 26 Ala. 690 ; *Williams v. Sims*, 22 Ala. 512 ; *Wilson v. Jones*, 8 Ala. 536 ; *Young v. Scott*, 5 Ala. 475 ; *Blair v. Rhodes*, 5 Ala. 648 ; *Jackson v. Waddell*, 1 Stew. 579 ; *Robinson v. Noble*, 8 Peters, 181 ; *Lanier v. Trigg*, 6 Sm. & Mar. 641 ; *Gordon v. Parker*, 2 ib. 485 ; *Bonnell v. Coington*, 7 How. (Miss.) 322 ; *Smith v. Dunlap*, 12 Ill. 184 ; *Hixon v. Hixon*, 7 Humph. 33 ; *Phelps v. Riley*, 3 Conn. 266 ; *Anderson v. Ewing*, 3 Litt. 245 ; *Van Vleet v. Adair*, 1 Blackf. 346. The measure of damages, thus established, is the value of the Confederate currency at the time of payment, when the breach was committed by a failure to pay the stipulated amount of such currency. This was the law at the time when the contracts which are the subject of suit in this case were made.

The value of the consideration, upon which the contract

was made, is not an element to be considered in the ascertainment of the damages due upon a breach. The standard of their measure is the value of the currency or thing to be paid or delivered. There can be no question that the right to recover damages according to this standard is of the essence of the contract, and is guarded by the prohibition against imparing the obligation of contracts, contained in the constitution of the State of Alabama and of the Confederate States, which were in force in this State when the contract was made, as well as in the constitution of the United States. So, on the other hand, the obligation of the promisor to pay damages according to that exact standard, and according to it alone, is guarded by the same constitutional provision. Any legislation, which would increase or lessen the measure of the recovery for the breach of the contract, impairs its obligation, and must be void.—*McCracken v. Hayward*, 7 Howard, 608; *Grantly's Lessee v. Ewing*, 3 Howard, 707; *Curran v. State of Arkansas*, 15 Howard, 319.

Therefore, if the ordinance of the convention be understood to substitute the value of the consideration, for which the notes were given, for the value of the Confederate money to be paid, it impairs the obligation of the contract. So, also, if it should make the value of the consideration an element to be regarded in ascertaining the extent of damages, it would violate the constitution; for the prohibition of the constitution does not look to the degree of impairment, but is as intolerant of the smallest, as of the greatest infringement of the obligation of a contract.— *Ex parte Pollard*, 40 Ala. 77, opinion of Walker, C. J. And the prohibition applies as well to a State convention, as to a State legislature. —*Dodge v. Woolsey*, 18 Howard, 331.

The third section of the ordinance may be divided into two clauses; the first of which declares, that evidence of what was the consideration, and of the understanding or agreement as to payment in Confederate money, should be admissible; and the latter of which prescribes, that if there appears to have been an understanding or agreement for payment of Confederate currency, the *value* of the consideration, and the amount to which the plaintiff might

Kirtland v. Molton.

be legally, justly, and equitably entitled, could be shown. The first clause, in permitting the ascertainment of the stipulation for payment of Confederate currency, is susceptible of a complete execution, upon legal principles, without the aid of the latter. When, under its authority, proof is admitted of the additional term as to Confederate currency, the established and pre-existing law meets the exigency of the case, and restricts the recovery of the value of the stipulated number of dollars of Confederate currency. It is obvious, therefore, that this (the first) clause can stand, and be enforced, without the latter; and even if the latter be unconstitutional and void, it is susceptible of enforcement by the courts, and should be enforced, according to the principles which are herein before laid down.—*Mobile & Ohio Railroad Company v. State*, 29 Ala. 573.

The value of the consideration can not influence the measure of recovery, when the promise is to pay a fixed amount of Confederate currency, at a specified time; because the law of the contract, which the constitution protects from impairment, does not permit it. We are required, upon an established principle of interpretation, to strive to find some other operation for the provision as to proof of the value of the consideration, and to avoid, if it can reasonably be done, a construction which places the law in conflict with the constitution. The ordinance of the convention is applicable not merely to written contracts for the payment of a *specified amount* of the Confederate money, but to all contracts to be discharged in such money, whether the amount is specified or not. For example, if services have been rendered, or goods sold, upon a contract to be paid for in Confederate money, without any specification of the amount, the contract would properly be the subject of a *quantum meruit*, or *quantum valebat* count. Under such a count, proof of the value of the consideration would be appropriate and necessary. There are, doubtless, other cases also, in which such proof would be proper and admissible.

The objection may be made, that this view gives no effect to the provision of the ordinance as to proving the value of the consideration, because such evidence would be com-

petent without the aid of the ordinance. To this objection there are two replies : that the courts are bound to know, that legislative provisions are sometimes rather cautionary than necessary, and adopted mcre from an apprehension of their necessity, than an enlightened legal conviction of it; and that cases may possibly arise, in which the consideration is so stated in a written contract, as to preclude free and unembarrassed investigation by parol evidence as to what the consideration was, and as to its value. We may, therefore, find for the adoption of the provision as to the proof of the consideration and its value a reason in abounding caution, and also in the possible necessity of it in some cases, in order that an inquiry into the consideration might be had, unaffected by the rule which prohibits the varying of a written instrument by parol evidence.

To hold that the convention intended, by the second clause of the section, to set aside the established law applicable to the contract, as to the measure of recovery, and substitute the value of the consideration, would make the clause itself inconsistent. It permits the party to show the value of the consideration, and what amount the plaintiff is entitled to receive " *according to the contract.*" There is an obvious repugnancy in the clause, if it be understood to contemplate a recovery measured by the plaintiff's right " *according to the contract,*" and to contemplate the rejection of the plaintiff's legal right *under the contract,* and the adoption of the value of the consideration in place of it.

The difficulty of finding an office for all the words of the section, consistently with the constitutional restraint upon State legislation, is acknowledged. It is a judicial duty to seek for such a construction ; and we think we have suggested one tolerated by the rules of intepretation. Be that, however, as it may, the first clause is entirely free from constitutional objection ; and under its operation, without the last, the plaintiff's recovery, in this case, is to be admeasured by the value of Confederate money at the time when the respective notes fell due. The construction which we have suggested for the last clause, and which harmonizes it with the constitution, avoids any conflict with the

Kirtland v. Molton.

law-appointed measure of the plaintiff's recovery, when the additional stipulation as to Confederate money is proved.

We realize and sympathize with the hardship which must arise in those cases where the maturity of the note was at a time when the Confederate money was of but little value; or was after the surrender of the Confederate armies, when such money was of no value. In the former class of cases, the recovery would be very small; in the latter, it would be restricted to nominal damages. The promisee having contracted for payment in a currency of fluctuating value, subject to the vicissitudes of war and politics, must submit to the depreciation, as he would have received the benefit of any appreciation, had the order of events been reversed. The hardship here is striking in its degree, but the same in kind with that which is of frequent occurrence in trade and commerce. An analogous case would be presented, if a promise were accepted for the payment of cotton, upon a basis of value of thirty cents per pound, and, at the time of payment, its value should be reduced to six or ten cents. Confidence would be destroyed, and trade paralyzed, if the obligation of contracts were made to yield to hardships, incident to the fluctuations of values and currencies. The sanctity of contracts is consistent with true policy, and exacted by the constitution. A party, acting fairly and lawfully, has a right to stand upon his contract; and has a right to the benefit of a good bargain, if superior sagacity, caution, or forecast, has enabled him to make one. If each one of two persons buys, at a fair sale, the same article, at the same time, one agreeing to give double the value, and the other one-half, each must pay according to his contract; and there is no principle of law, which would graduate the liability of either by the value of the thing bought. If the events which occurred after the making of the contracts in this case, have developed a good bargain to the promisor, he is entitled to the benefit of it, and can not be required, for the relief of a hardship, to pay the value of the things bought. Such a requirement would violate the constitution.

The value of the consideration is competent proof, on account of its pertinency to the question, whether the parties understood, or agreed, that payment of Confederate

money should be made. But it was admissible in no other point of view in this case. The measure of damages in this case is fixed by the law, and could not be left to be determined by the jury, according to their sense of equity and justice under all the circumstances.

The decision in *Sheible v. Bacho*, at the present term, settles the point, that the contracts in this case are not illegal and void.

Reversed and remanded.

BYRD, J.—I am inclined to the opinion, that the convention was not clothed with any legislative power, and that the exercise of it in the adoption of the ordinance of the 28th September, 1865, (No. 26,) is unauthorized, and the ordinance void.—Jameson on Constitutional Conventions, 309, 310, *et seq.* The constitution of the State then in force clothed the general assembly and the executive with all legislative powers ; and that constitution must be held to be in force until the new one is substituted in its place. And the new one has the same provision, in this respect, as the old one. I do not say that, if the new constitution provided for the validity of such ordinances, they would not be valid ; nor that, if they were submitted to a vote of the people, and ratified, they would not be valid. But neither was done by the convention of 1865. Its power was limited to the formation of a State constitution, and no legislative power was conferred on it by any competent authority, nor have its ordinances been ratified by the people. Be this as it may, my brethren hold that the ordinance is valid and constitutional ; and to this I yield in my judicial action.

I do not think that the ordinance referred to is constitutional, in so far as it may seek to interpolate a stipulation in contracts which, when they were made, was not by the law of the land a part of the contract. To give it such an interpretation, would be violative of that provision of the national constitution which inhibits a State from impairing the obligation of contracts.

In the case of *Ex parte Pollard*, decided at the June term, 1866, of this court, WALKER, C. J., in delivering an

Kirtland v. Molton.

opinion, in which I concurred as to the portions hereafter cited, said : "The prohibition of the constitution is as to the *impairment* of the obligation. This must not be confounded with destruction; it may be impaired, and yet not destroyed. * * * The obligation is impaired, when it is made worse; diminished in quantity, value, excellence, or strength. The objection to a law can never depend upon the extent of the change which the law effects in it." And again: "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree, or manner, or cause, but of encroaching in any respect on its obligation, or dispensing with any part of its face." And again : " As the legislature cannot directly impair the obligation, *a fortiori* it cannot by indirect means." In the language of Chief-Justice Marshall, " The principle in the contemplation of the framers of the constitution was the inviolability of contracts, and this principle was to be protected in whatever form it might be asserted." And he further quotes from an opinion of Mr. Justice Trimble, approvingly, as follows : " Whether the law professes to apply to the contract itself, to fix a rule of evidence, a rule of interpretation, or to regulate the remedy, it is equally within the true meaning of the constitution, if it in effect impairs the obligations of the contract."

This ordinance, tested by the principles thus laid down in the opinion of the Chief-Justice in the case of *Ex parte Pollard*, is clearly violative of the Federal constitution, if it means to allow the interpolation of a new stipulation in the contract by parol evidence, whereby the principles of the common law such a stipulation could not be inserted, except by an application to a court of equity to reform the contract ; or if it means to change the contract, by allowing the " true value of the consideration" of the contract to be recoverable, instead of what the parties agreed was the value thereof ; or if it means that the value of Confederate money at the time the contract is due and payable is recoverable ; or if it means that the creditor can only recover the value of Confederate treasury-notes at the time the contract falls due by its terms, in cases where the con-

tract is not upon its face dischargeable in such notes, or
by some agreement which makes it so, and which is, by the
principles of the common law, or by the doctrine of courts
of equity, binding upon the parties to the contract.

Mr. Justice Judge, in the case of *Ex parte Pollard*, in his
opinion holds the same doctrine as Chief-Justice Walker,
above quoted; for in his opinion he says : "The obligation
is the law which binds the parties to perform their agree-
ment, according to its essence, nature, construction, and
extent." And in speaking of the power of the legislature
over the remedy, he says : " That this power is subject
only to the restriction, that it cannot be exercised so as to
take away all remedy upon the contract, or to impose upon
it new burdens and restrictions, which materially impair
the value and benefit of the contract." Now, if the legis-
lature allows the contract to be *materially* changed, whether
by the instrumentality of evidence which by law is inad-
missible, or by any other indirect or direct means, it would
effectually " impair the value and benefit of the contract."
If the contract, at the time it was made, and when the or-
dinance was adopted, had a certain and fixed obligation,
which bound one party in law to pay a certain amount of
money, and the other to receive it, in discharge of the con-
tract, this right is protected by the constitution of the
United States, as much in favor of the one party as the
other; and no State action can diminish the amount the
payee is entitled to receive, or enlarge the amount the payer
is obligated to pay.

An understanding, not expressed in a written contract,
is no part of it; and if parties thereto were to agree that
it was to be paid in Confederate treasury-notes, and the
agreement was left out of it by the consent of both parties ;
or if it was not contained therein, for any reason for which
a court of equity would refuse to reform it; then it would
not be a part of the contract, or binding on either party.—
*Leslie v. Langham's Executors*, 40 Ala. 521. And to give
such an understanding validity, would be directly violating
the obligation of the contract, by the interpolation of a
new term in it, which diminishes the amount due by its
terms at the time of its execution.

In my opinion, the only constitutional operation which can be given to the ordinance, is to allow a party, in a court of law, to prove an agreement that the debt was dischargeable in Confederate currency, where it would be allowable to do so in a court of equity, on a bill to so reform the contract, and to fix thereby the measure of damages. But I doubt whether that was the intention of the convention. For the ordinance, construed by the language contained therein, clearly indicates that the intention of the convention was to make the "true value of the consideration" of the contract, the measure of damages. It was not its intention to make the value of Confederate money at the date of the contract, or at its maturity, the measure of damages. The former intention is clear from the use of the phrases, the "true value of the consideration of the said contract," and "according to the contract." If the convention had meant the value of the Confederate money, it would not have used the words "true value of the consideration." If it had meant the value of Confederate money at the maturity of the contract, it would not have used the words "of said contract," and "according to the contract;" but would have used, in the first instance, the phrase "of said understanding or agreement;" and in the latter, "according to the understanding or agreement." The word *contract*, in both instances, refers to the words "contracts" and "contract," used in the foregoing part of the same section.

It is so clear from the language of the statute, when construed by legal rules of interpretation, that the convention intended by the ordinance to make the "true value of the consideration," and not the value of the thing in which that consideration was dischargeable, the measure of damages, that it is impossible for me to give any other construction to the ordinance. Where two constructions can fairly and legitimately be given to a statute, it is the duty of the court to adopt the one which is constitutional, if one is so and the other not, although the one adopted is not the one which the language would most naturally suggest. But this follows from another rule, which requires the court to give some effect to a statute, if it can be done according to

the rules of law. But those rules do not require a court to adopt an interpretation, which is in direct conflict with the language of the statute and the intention of the legislature, when the language is clear and explicit in expressing an intention which is inconsistent with the constitution. We cannot give effect to a law by a strained construction, when the natural import of the language is clearly repugnant to such a construction. In such a case, the legislative intent must be declared unconstitutional, and the courts cannot supply it with one which is constitutional. If so, then a court could always avoid declaring a law unconstitutional, by casting out a drag-net, and fishing up an intention which would answer the purposes of the occasion. I cannot, according to my views of legal principles, supply an intention, which is not only not expressed, but is clearly negatived by the language of the convention; and that, too, when, in my opinion, the supplied intention is as unconstitutional as the one expressed. The ordinance is unconstitutional, in attempting to make a contract, which, upon its face, is payable in Confederate currency, recoverable on the value of its consideration, instead of upon the value of the currency in which it is dischargeable. In my opinion, the third section of ordinance No. 26 is wholly unconstitutional, unless it is allowable under it for a contract to be reformed in a court of law, and a recovery had on it according to law as so reformed.

I would freely, if I could, give an interpretation and enforce it, which would relieve parties from the hardships that may flow from the doctrine which, in my opinion, is established law. But, a contrary doctrine will produce many hardships, and possibly greater than those which will flow from the law as it is laid down in this opinion. Be this as it may, it is my duty to follow the law, whatever may be the consequences. A people make their own laws, and they appoint judges to interpret and enforce them; and when we do this faithfully, we have fulfilled the part assigned us in the great drama of social and political progress and advancement.

The words "understood" and " agreed," connected by the word "or," although they may not have been used as synony-

Kirtland v. Molton.

mous or equivalents by the convention, yet I am satisfied that no understanding between the parties to a contract, which did not amount to an implied or express agreement, could be enforced in a court of law; nor did the convention intend to make a contract for the parties out of an understanding which did not amount to such an agreement.

The word "agreed," as used in the ordinance, is to be taken in the sense of *stipulated*, or stipulating by way of settling differences, or determining a price or mode of payment. It is the consenting of the mind of the parties contracting to certain things to be done, or left undone, by them or some one of them. To suppose or hold that the convention intended to make a contract, or any part of one, out of a *nudum pactum*, would be discreditable to any judicial tribunal; and would be attributing to the convention a degree of mental inanition or moral obliquity highly derogatory to any legislative body.

To hold that the value of Confederate treasury-notes at the maturity of the contract is to be taken as the measure of the damages, leaves no field of operation for that clause of the ordinance which authorizes the parties "to show what was the real and true value of the consideration of the contract, and what amount the plaintiff is legally, justly, and equitably entitled to recover according to the contract, by the judgment of the said court."

In my opinion, the result attained by a majority of the court is in violation of the ordinance, and abhorrent to law and justice.

These views are expressed in this cause, but are to be taken as applicable to all cases now pending in this court involving questions herein noticed; and this will relieve me from dissenting in each case.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application for a re-hearing, made by the appellee's counsel, the following opinion was delivered:

JUDGE, J.—The counsel for appellee, in their petition for a re-hearing, have fallen into an error, which a majori-

37

ty of the court deem it proper to correct. The counsel assume the position, that the case comes within the influence of the rule applicable to a note *payable in money*, but with condition that it may be discharged, *at the option of the maker*, by a payment in some article or commodity, *other than money*. A few words may suffice to show the error of this position. If it be shown by *parol evidence*, under the ordinance of September 28th, 1865, that the parties to a contract, at the time of its execution, "understood or agreed that the same *should* be discharged by a payment in Confederate currency, or treasury-notes," such a contract is clearly not one payable in money, with a condition that it may be discharged by a payment either in money, or in Confederate States treasury-notes, at the option of the payor ; and the difference between the two cases is so *patent*, that it cannot be made clearer by argument. In the one case, the obligation of the contract, which is protected and required to be enforced by the constitution, as well as authority and the analogies of the law, all constrain us to adopt the conclusion, that the measure of damages, in a suit upon the contract, is the value of the Confederate States treasury-notes, at the time the contract required them to be paid ; while in the other case, it has long been the settled law of this State, that, if the payor neglects to avail himself of the *privilege* inserted for his benefit, according to its terms, the contract becomes an absolute promise to pay money.—See *Weaver v. Lapsley*, decided at the present term.

We attained our conclusion, after the most careful study and investigation, and with a full appreciation of all the difficulties and inequalities which might result from it ; our view of the constitution and the law leaving us no alternative.

The application for a re-hearing is overruled.