## HERBERT & GESSLER vs. EASTON.

[BILL IN EQUITY TO FORECLOSE MORTGAGE.]

1. *Ordinance No. 26 of convention of* 1865; *3d section of, constitutionality of.*—The 3d section of ordinance 26, adopted by the State convention of 1865, does not infringe the constitutional guaranty of the obligation of such contracts as are therein referred to.

2. *Contract for sale of property in Confederate currency; measures of damages for breach of.*—In estimating what a plaintiff is justly and equitably entitled to receive, on a contract for the sale of property which might have been discharged by payment in Confederate treasury-notes, the true criterion is the value of the property sold, in lawful money, at the date of the sale.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. N. W. COCKE.

The facts upon which the case turns will be found in the opinion.

BOYLES & OVERALL, for appellants.—Appellants insist that the chancellor erred in his decretal order of reference directing the master to ascertain and report the value of the land, at the date of the contracts, and what the defendant had paid on the same, and comparing the true value with the price contracted to be paid, to report the amount due.

After ascertaining whether or not the understanding and agreement between the parties was that the consideration was the payment of the amount of the purchase-money in Confederate treasury-notes, the reference should have required the register to ascertain and report the value of the Confederate money at the maturity of the note. Such is the method of proceeding provided by the 3d section of the ordinance (No. 26) of the convention of 1865, adopted 28th September, 1865.

And such is the opinion of this court on the construc-

tion of that ordinance, in the case of *Kirtland v. Molton,* in manuscript, delivered at the January term, 1868.

If it was the design of the ordinance to ascertain, by judicial investigation, the value of property which the parties had agreed on, and reduced their contract and valuation to the solemn form of a deed, executed and delivered, and possession given of the land, then the ordinance would be obnoxious to the constitutional obligation of contracts, prohibited alike by the constitution of this State, and of the United States.—*Kirtland v. Molton, supra.*

Carrying out this erroneous order of the chancellor, the whole evidence in the case is directed to ascertaining the value of the land, at the date of the contract, in coin or United States currency, and, as neither kind of money was the currency at the time the contract was made, the parties are driven to the necessity of ascertaining the value of the land before the war and since the war ; and thereby drawing some analogy as to the value during the war, viz : On the 20th October, 1864.

It is hardly necessary to cite authorities to show that the chancellor could not make a new contract between the parties. The complainant was entitled to recover, on the basis of the ordinance, the value of the Confederate States treasury-notes at the maturity of the note, or he was entitled to recover nothing.

Is not a contract payable in Confederate treasury-notes, payable in *chattels ?* Would not a party be bound to receive payment in the thing contracted for, if tendered at the maturity of the contract ? If a party fails or refuses to tender, then the measure of the recovery would be the value of the chattel in money at the date of the breach.— *Armstrong v. Tait,* 8 Ala. 635.

If the Confederate States treasury-notes were not a legal consideration as money, the contract of the parties can be carried out and enforced, on the idea of the notes being held as chattels, and on a failure of tender, to show, under the ordinance, the value, at maturity, of the note in Confederate money.

The register, under the order of reference, made the anomalous report that he had ascertained that the defend-

ants had contracted to pay for the lots $16,500 ; that they had paid thereon $13,000, leaving due $3,500. But in what sort of money or chattels, the report does not inform us. He then reports that he finds the value of the property sold to be $4,000 in October, 1864, and is again silent as to the kind of money. Using his own figures, and taking the report on the basis of dollars, the defendants have paid for the property three times over, if the value, as ascertained by the register and court, is to be the guide of decision in this case. He then proceeds and charges the appellants with 35-165 of $4,000—being $848.48, and interest since 1st April, 1865, $186,63—$1,034.11. This was a report and confirmation by the court, which it would be hard to reconcile with any known rules of adjusting claims between parties.

For these reasons, and many others that might be urged, this cause should be reversed, and the chancellor required to order the master to report the value of the Confederate treasury-notes, at the maturity of complainant's note, and the interest on such value at such maturity.—*Kirtland v. Molton, supra.*

E. S. DARGAN, *contra.*—The language of the ordinance of 25th September, 1865, Revised Code, page 59, shows upon its face the propriety of the decree. A different one would be repugnant, not only to the ordinance itself, but also to common justice and common sense.

It is indeed doubtful if the parties agreed for the payment of Confederate money at all, unless it was paid before the first of May, 1865. If they did not, the decree was injurious to Easton, not to appellants. But, supposing that Confederate money was contracted for, the decree is free from error.

B. F. SAFFOLD, J.—On the 20th of October, 1864, the appellants purchased from the appellee certain lots of land in the city of Mobile, and gave him five promissory notes therefor, the payment of which they secured by a mortgage on the lots. In the mortgage it was stipulated that these notes might be paid at any time before the maturity

of the last one, in Confederate treasury-notes. All of the notes were paid within the time specified, except the last one, which was for $3,500, due on the 1st of April, 1865. The appellee having filed a bill to foreclose his mortgage, the chancellor, in his decree of reference, directed the register to ascertain the amount due on the mortgage, by obtaining a sum which should bear the same proportion to the value of the property at the date of the sale, as the nominal sum then due bore to the nominal sum agreed to be paid. This ruling is assigned as error.

The proof of the value of the premises, though conflicting to some extent, sustains the report of the register, and unless there is error in the basis of adjustment propounded by the chancellor, the decree must be affirmed.

The determination of this question involves the validity and construction of the third section of an ordinance adopted by the State convention of 1865, on the 28th of September of that year, known as ordinance 26. The section enacts that " In all suits upon contracts, made between the 1st of September, 1861, and the 1st of May, 1865, parol evidence shall be admissible to prove what was the consideration thereof, and whether or not the parties thereto understood or agreed that the same should be discharged by a payment in Confederate currency, or treasury-notes; and if so, or if it appears so from the contract, then to show what was the real or true value of the consideration of the said contract, and what amount the plaintiff is legally, justly, and equitably entitled to receive, according to the contract, by the judgment of said court."

It is manifest that this law seeks to establish a rule of evidence respecting certain past transactions. If it does no more than this, it cannot be said to impair the obligation of contracts. Laws which change the rules of evidence, relate to the remedy only ; and while such laws may, on general principles, be applied to existing causes of action, it is plain that they are not precluded from such application by the constitutional provision which we are considering.—Cooley's Const. Limitations, p. 288.

The contract between these parties was the exchange of land for a sum of money. The vendor having complied

with his part of it, the obligation of the contract on the vendees was to do what they promised. The notes and mortgage are proofs of what they undertook to do. These do not show that the debtors were to pay in specie, or its equivalent, the nominal amount of dollars expressed. On the contrary, the mortgage says, that at any time before the last payment became due, all of the notes might be paid in Confederate currency. It cannot be concluded that a person would seriously contract in 1864 to sell property for sixteen thousand dollars in gold or in Confederate currency, at the option of the purchaser. It appears, therefore, from the contract, that the obligation was not to pay in specie or its equivalent. But if it did not, and proof *aliunde* was needed for this purpose, it might be supplied under the ordinance without constitutional objection.—See authorities above quoted.

That the written agreement did not express the obligation of the parties being proven, the inquiry arises, what was the obligation; and this involves the value of the consideration.

The appellants contend that a contract to pay in Confederate currency, is equivalent to a contract to pay in chattels. Chattels are things recognized by law as property. Our laws do not so recognize Confederate currency. The Confederate laws represented it as money, and "money hath been accounted not to be goods or chattels."—Jacobs' Law Dictionary.

It may with more propriety be said of such an agreement, that no kind of currency was contracted for, other than such as might be in use when payment was made, and no price was fixed other than the value of the thing sold.

In 1781 the legislature of Virginia passed a law substantially in the terms of the section of the ordinance we are required to construe, and intended to meet a similar exigency. The second section of the Virginia law enacted that, " all debts and contracts entered into or made in the current money of this State or the United States, excepting, at all times, contracts entered into for gold and silver coin, tobacco, or any other specific property, between the 1st day of January, 1777, and the 1st day of January, 1782,

now remaining due and unfulfilled, or which may become due at any future day or days, for the payment of any sum or sums of money, shall be liquidated, settled and adjusted agreeably to a scale of depreciation hereinafter mentioned and contained; that is to say, by reducing the amount of all such debts and contracts to the true value in specie, at the days or times the same were incurred or entered into, and upon payment of said value so found, in specie or other money equivalent thereto, the debtors or contractors shall be forever discharged of and from the said debts or contracts, any law, custom or usage to the contrary in anywise notwithstanding." The fifth section enacted, "That where a suit shall be brought for the recovery of a debt, and it shall appear that the value thereof hath been tendered and refused; or where it shall appear that the non-payment thereof hath been owing to the creditor; or where other circumstances arise which, in the opinion of the court before whom the cause is brought to issue, would render a determination agreeable to the above table unjust; in either case, it shall and may be lawful for the court to award such judgment as to them shall appear just and equitable."

Chief-Justice Marshall, in the lucid and conclusive interpretation of this act, in the case of *Faw v. Marsteller*, which his great knowledge of the law, and accurate perception of justice so eminently qualified him to give, says: "The act is applied directly to the date of the contract, and the motive for making it was, that contracts entered into during the circulation of paper money, ought in justice to be discharged by a sum differing in intrinsic value from the nominal sum mentioned in the contract, and that when the legislature removed the delusive standard, by which the value of the thing acquired had been measured, they ought to provide that justice should be done to the parties." He says further: "In enquiring what 'judgment will be just and equitable,' the court can perceive no other guide by which its opinion ought, in this case, to be regulated, but the real value of the property at the time it was sold." "The value at the date of the contract must be the sum which in equity and justice the lessee ought to pay. In finding this

value, however, the jury ought not to be governed by the particular difficulty of obtaining gold and silver coin at the time, but their conduct ought to be regulated by the real value of the property, if a solid equivalent for specie had been made receivable in lieu thereof." The decree of the court directed an issue to be tried in order to ascertain what was the actual annual value in specie, or in other money equivalent thereto, of the property at the date of the sale.—*Faw v. Marsteller*, 2 Cranch, 10.

The appellants further insist, that the latter part of the section of the ordinance under consideration, impairs the obligation of the contract in authorizing the court to determine the value of the consideration when it had already been fixed by the contract of the parties. The above cited case is not an authority on the constitutional question, as the law therein construed was anterior to the federal constitution. The objection can not be maintained. If the contract itself, as it does in this case, or if parol testimony, which is shown by authorities may be allowed, manifests that the parties did not determine the value of the consideration by any standard recognized by law, the basis of the objection is removed.

I apprehend that the law of the contract would have been the same without the ordinance, under the doctrine of usage, and perhaps of the *lex loci*. Evidence of usage or custom is received for the purpose of ascertaining the sense and understanding of parties by their contracts, which are made with reference to such usage or custom.—*Renner v. Bank of Columbia*, 9 Wheaton, 581.

For the purpose of argument, we may assert that at the time this contract was made, the usage of the people of Alabama, in temporary contracts at least, was to contract in view of payment in Confederate currency. The term " dollar," at that time in this State, was more commonly used to designate Confederate currency, than specie or United States treasury-notes. If this be so, the third section of the ordinance does not even change the rule of law which precludes the admission of parol evidence to contradict or substantially vary the legal import of a written instrument.

In *Kirtland v. Molton*, (41 Ala. 548,) this court held that the first clause of this section simply changes a rule of evidence, but that the residue, in its obvious meaning of making the value of the consideration the measure of the recovery to which the plaintiff is legally, justly and equitably entitled, does violate the obligation of the contract.

Mr. Justice Judge, in response to an application for a rehearing in that case, sums up the essence of that decision in a few expressive words. He says: "A contract which may be discharged by a payment in Confederate currency, is not one payable in money, with a condition that it may be discharged either in money or in Confederate currency." The court evidently regarded the Confederate currency as property, as uncurrent money. In this is the difference of opinion between them and us. We can not so esteem it. No law recognizes it as either. We can not deny that it had value during the war. We must also recognize that it was not the intention of the parties to a contract which might be discharged by a payment of this currency, that if it became valueless by the triumph of the United States, the contract was on that account to become void. There was in the minds of every one a general impression that a *quantum valebat* or *quantum meruit*, somehow to be ascertained, was to be paid. We think this is the legal effect of such a contract, and perhaps we may say it was an implied agreement of the parties.

We do not propose to disturb the former decisions of this court, that, where payment is to be made in any specific property, the measure of damages is the value of the property at the maturity of the obligation.

The agreement of the parties has become impossible of execution. The delusive standard by which the value of the thing acquired had been measured has vanished, and the value of the property, at the time it was sold, is the guide to the "just and equitable" judgment. We believe that such would have been the law without the ordinance, and that the ordinance does not impair the obligation of contracts.

The judgment is affirmed.