# Daughdrill *v.* Edwards *et al.*

### *Injunction. Specific Performance.*

1. *A court of equity will not enjoin an action of ejectment brought to recover land not conveyed by deed.*—A court of equity will not enjoin an action of ejectment brought for the recovery of land, sold for Confederate treasury notes, when no deed of conveyance had been executed, and the promissory note given for the purchase-money, had matured after the surrender of the Confederate armies in 1865.

2. *An alleged willingness to comply with a contract is not a tender of payment.*—A specific performance of such a contract will not be decreed upon the allegation of the complainant, that he is ready and willing to comply with his contract in every particular, "and offering to do, whatever this court may order to be done in the premises respecting said Confederate money." This is not equivalent to an offer to pay whatever may be found due the defendant.

3. *The value of land sold during the war must be estimated in lawful money at the time of the sale.*—The value of land sold under the circumstances shown by the record in this case is the value of the property in lawful money at the time of the sale.

APPEAL from the Chancery Court of Talladega.
Heard before the Hon. NEIL S. GRAHAM.
The facts are contained in the opinion.

LEWIS E. PARSONS & GEO. W. PARSONS, for appellant.

GEORGE S. WALDEN, and J. T. HEFLIN, for appellees.

STONE, J.—On the 28th December, 1864, Daughdrill purchased from Edwards a lot and residence in Talladega, made a small cash payment, and gave his two notes for the residue of the purchase-money, due severally May 1st and September 1st, 1865, each bearing interest from date, and each payable " in Confederate money, if paid at maturity." Edwards gave Daughdrill a bond to make him title, after the maturity and payment of the notes ; and he put Daughdrill in possession of the property. No title has ever been made, and Edwards brought his action at law to recover possession of the lot and dwelling. Therefore Daughdrill filed this bill, the object of which is to have specific execution of Edwards' agreement to convey, and to enjoin perpetually the said action at law. The chancellor dismissed the bill at the costs of Daughdrill, who brings the case to this court by appeal. Two grounds are urged before us why complainant should have relief; First, tender of the Confederate money, &c., which is claimed as payment in effect. The bill shows that the contract was made in the town of Talladega, Alabama, where Edwards then resided ; and that immediately afterwards, Edwards removed to Mississippi, carrying and retaining the notes with him, and that Daughdrill did not know, and could not learn his residence or address. The averments of the bill bearing on the question of tender and attempted payment, are as follows : " orator states that just before the first note became due, he came to Talladega where the said Edwards lived when the trade was made and the notes given, and brought with him six thousand five hundred dollars, together with interest on one-half thereof up to that time, viz: four months after the 28th day of December, 1864 ; and interest on the other half thereof, to eight months from the 28th of December, 1864 ; and on the day when said note first payable became due, he was ready to pay each of said notes, but the said Edwards could not be found ; and orator was informed that he had removed to some part of the State of Mississippi, and carried the notes with him, but where, or in what part of said State, orator could not learn." He then averred Edwards kept an agent at Talladega, and that he, Daughdrill, inquired of the agent for the notes, but that Edwards had carried them with him to Mississippi. The bill then avers " that when said Edwards removed from Talladega he intended to settle somewhere in the West, and he so stated to his friends about the time he was leaving Talladega; and the only information orator could obtain as to his whereabouts,

was that he had stopped somewhere in the State of Mississippi. The first communication orator had from said Edwards purported to be written from some place in that State, sometime after the surrender, and was directed to orator at Mobile, where orator was then living, and where he had lived for many years before the war. Said letter . . . stated that he (Edwards) had the notes with him in that State." The bill further charges that, failing to find the notes, or an authorized agent of Edwards in Talladega, Daughdrill deposited the Confederate money, sufficient in amount to pay the notes, principal and interest up to maturity, in an insurance company and banking house at Talladega, for the payment of said notes, where it has remained in the identical bills ever since. The bill further charges that it was Edwards' duty to give complainant notice of his whereabouts, and he failed to do so.

The answer of Edwards admits he removed to Mississippi and carried the notes with him, and had them there when they matured. He answers and pleads that at the time of the trade Daughdrill was informed of this, understood it, knew the place to which Edwards intended to remove, and did remove, and promised to pay the notes, saying he could pass by said Edwards' future home of which he was thus notified. The answer denies the other charges stated above. The testimony of Daughdrill is, that he made inquiry at Talladega, of the agent of Edwards and others, for the notes that he might pay them ; and that failing to find them, he deposited the money in special deposit as alleged—and the money remained there, without change of bills, until the filing of the bill in this cause. The secretary of the insurance company confirms him as to the deposit, and that the money remained there unchanged, until this witness was called to testify, when he made the bills a part of his deposition. The testimony of this witness tends to show that the Confederate money was deposited a considerable time before the maturity of the first note—May 1st, 1865. On the other hand, Edwards testifies to the truth of the averment, that Daughdrill was informed of the place to which he intended to remove, and did remove, and stated he could call by there, and make payment.

Two circumstances tend strongly to show that Daughdrill did not consider the debt to Edwards discharged, by the deposit made by him, and attendant circumstances. In June, 1865, long after the deposit was made, and more than a month after the overthrow of the Confederate cause, (by which the value

[Daughdrill v. Edwards.]

of Confederate money was destroyed,) Daughdrill sold his claim on the house and lot to Savery, for a trifle to be paid to him Daughdrill, and a written obligation to him Daughdrill, by which Savery bound himself to pay and take up said purchase-money notes given by Daughdrill to Edwards. And, on 13th January, 1866, Daughdrill wrote to Edwards, as follows : " In relation to the amount due you for the place I purchased from you in Talladega, I have only to say that I turned the trade over to your old friend Joseph Savery. Soon after you left I found it necessary to move to Mobile where I had lived thirty years, and let him take the trade off my hands. I have his obligation to hold me harmless against the notes you hold on me, and I transferred to him the bond for titles which you gave me. I think he expects to settle with you for the notes, at the value of the money at the time the papers bear date, or at the time of their maturity. . . Write to him about it, as I have now no interest in it." Savery, without complying with his contract, died in March, 1866, and his estate was insolvent. So, the trade between him and Daughdrill fell through. In this state of the record, it is doubtless if this feature of the case is made out on the facts. We say nothing of the law of the question above presented. We prefer to rest our opinion on a different principle.

It will be remembered that the first of Daughdrill's notes matured May 1st, and the last September 1st, 1865. General Lee surrendered his army at Appomattox April 9th, and General Johnston surrendered his at Durham station April 26th, 1865. The last of these surrenders was made five days before the maturity of Daughdrill's first note. Confederate money had a purchasing power, and hence had an admitted value, in all places under Confederate control, so long as the civil war lasted. It was a standard of value, paid debts, purchased property ; and transactions, based on it as a consideration, were upheld in the highest judicial tribunals of the land. This, on a high principle of public policy, springing out of the necessity that every community shall have a circulating medium, without which it is difficult to conserve life, health, or public order.—*Thorington v. Smyth*, 8 Wall. 1 ; *Delmas v. Insurance Co.* 14 Wall. 661 ; *Atlantic, Tennessee and Ohio R. R. Co. v. Car. National Bank*, 19 Wall. 548 ; *Ferguson v. Lowry*, 54 Ala. 510 ; *Waring v. Lewis*, 53 Ala. 615 ; *Hutchinson v. Owen*, and *Tindel v. Drake*, at the present term ; *Ponder v. Scott*, 44 Ala. 241. But this value existed only so long as the Confederate forces had control.

[Daughdrill v. Edwards.]

When that struggle for separate national life ceased, Confederate money had no value, actual or conventional. Before either of these notes matured, it had ceased to have any value whatever. Nay, under the then re-established and recognized authority of the government of the United States, it could not circulate as money. If an attempt had been made to pay in Confederate money, either on the first of May or first of September, 1865, no legal rights could have grown out of it, because of the utter worthlessness of the thing tendered. The question then comes to this: Shall Daughdrill be exonerated from all payment for the house and lot purchased, because, between the date of the contract and the agreed time of its fulfilment, the fortunes of war had rendered its literal performance civilly impossible? And shall he have specific execution of his contract, when he has not paid the consideration promised?

Ever since the war, courts have encountered difficulties in solving questions like this. In *Kirtland v. Molton*, 41 Ala. 548, the notes sued on were payable in Confederate currency. Two of them were due before the surrender; but the value of Confederate money, compared with lawful money of the United States, was then very small. A third note was payable in June, 1865, when Confederate notes were valueless. The question was the measure of recovery. A majority of this court, as then constituted, decided that the measure of damages was the value of the specific currency at the maturity of the notes respectively. Under this ruling there could have been no recovery on the third note, while the recovery on the first and second notes would have been scaled to a very low figure. The *personnel* of this court underwent a change, when the reconstruction measures went into operation, and the same question came again before this court, in *Herbert v. Easton*, 43 Ala. 547. It was then held by our predecessors that the criterion of recovery in such case was the value of the property sold, in lawful money, at the date of the sale. This court has since undergone another entire change in its membership; and while we find great difficulty in reconciling the ruling with established rules of law, the later ruling has been uniformly followed.—*Riddle v. Hill*, 51 Ala. 224; *Ervin & Jones v. Hill*, ib. 580; *Whitfield v. Riddle*, 52 Ala. 467; *Tutwiler v. Erwin*, at the present term. We have felt the more reconciled to this, because it harmonizes substantially with the rulings of the Supreme Court of the United States on this vexed question.—*Thorington v. Smyth*, 8 Wall. 1; *Stewart v. Salaman*, 4 Otto, 434.

[Daughdrill v. Edwards.]

We have, then, the case where, under the law, it had become impossible to execute the contract as intentionally made. We are unable to lay down any measure of liability, other than that stated above; namely, the value of the property, in lawful money, at the time the contract was made, less the cash payment, which in this case is one-fourteenth of the purchase-money. The actual payment made, whether in specie, or specie and a mule, was received as the substitute of $500 of the $7,000, which is one-fourteenth. We do not intend to say that the gold valuation of the payment made, multiplied by fourteen, determines the value of the lot. That must be shown by testimony. When shown, then thirteen-fourteenths of that value with interest, is the sum which Edwards is entitled to, before he can be compelled to execute specifically the contract of sale. Daughdrill invokes the power of the court in this case, and what we have defined above, shows what he must offer to do, and do, before he can have specific execution of his executory agreement. Less than that does not satisfy the conscience of the court, and does not call into exercise its active powers in favor of complainant. This is what is meant by the court's sound discretion, in granting or withholding relief on bills for specific performance.—1 Brick. Dig. 692, §§ 758, 759, 760; *Black-wilder v. Lawless*, 21 Ala. 371; *Ellis v. Bowden*, 1 Ala. 459; *Seymour v. Delancey*, 6 Johns. Ch. 222; 1 Story Eq. Jur. §§ 742, 749, 750; *Bank of Alexandria v. Lynn*, 1 Pet. 376; Story Eq. Jur. § 769, 769a; *Daniel v. Collins*, 57 Ala. 625.

We do not intend to be understood as affirming that, if Edwards were the actor in this case, Daughdrill would be compelled to do and perform what we have laid down above, as the condition upon which he can successfully invoke the active powers of the court. Very far from it. Chancery is very exacting in the measure of right which will call its powers into exercise in such a case as this. It frequently denies relief to A, when it would alike refuse all counter-relief to B. There are many cases in which it leaves parties severely alone, and to such remedies as the law courts can furnish them. In this connection we commend the opinion of the chancellor, as a sound exposition of the law affecting this question. The complainant is entitled to no relief on the feature and aspect of the bill above discussed.

In the second place it is contended for appellant, if the bill fail on its primary aspect, then the chancellor should have decreed him relief, on condition he paid the purchase-money and interest; that the parties themselves fixed the

[Daughdrill v. Edwards.]

value of the land in good money, at one twenty-fifth of the agreed price, which would be two hundred and eighty dollars; that of this sum complainant had paid twenty dollars at the purchase, leaving due two hundred and sixty dollars with interest, and that the chancellor should have allowed him the privileges of paying that sum, and then decreed him title. We have shown above that the good-money price of the house and lot has not been fixed by the parties at two hundred and eighty dollars, but the value remains to be .ascertained, on testimony taken and to be taken. The averments of the bill on which this aspect of relief is claimed, are as follows: " Orator is now ready and willing to comply with his said contract in every particular, if the facts herein before stated do not amount to a performance, or readiness to perform said contract on his part. Orator insists that the facts stated in this bill show he was ready and willing to perform, and able to perform said contract on his part, and .that he did perform it as far as he was able to do so ; and if he did not perform it to the letter, it was because the said Edwards had removed from the State, and taken the notes with him ; or, if he left them with any person at Talladega as his agent for the purpose of receiving payment, he failed to give orator notice thereof, either by general public notice, which is usual in such cases, or a special notice of the agent's name and place of residence. . . Orator brings into court the identical Confederate money which he deposited as herein before stated in payment of said notes, and he deposits the same as the court may direct ; and he also offers to do whatever the court may order to be done in the premises, respecting said Confederate money." This language is not sufficient. Being " ready and willing to comply with his said contract in every particular," and offering to do " whatever this court may order to be done in the premises respecting said Confederate money," are not equivalent to an offer to pay whatever may be found due to defendant of the purchase-money.—*Nelson v. Dunn*, 15 Ala. 501 ; *Spoor v. Phillips*, 27 Ala. 193 ; *Freeman v. Jordan*, 17 Ala. 500 ; *Branch Bank v. Strother*, 15 Ala. 51 ; *Cain v. Gimon*, 36 Ala. 168 ; *McGuire v. Vanpelt*, 56 Ala. 344; *Rogers v. Tarbert*, 58 Ala. 523.

The objection that the chancellor did not dismiss the cross-bill is not sustained by the record.

Decree of the chancellor affirmed.