## PONDER ET AL. *vs.* SCOTT.

[BILL IN EQUITY TO RESTRAIN SALE OF LAND UNDER MORTGAGE AND FOR GENERAL RELIEF.]

1. *Deed, notice of intention to execute; what not notice of.*—Notice of an intention to execute a deed, is not notice of the contents of the deed as executed.

2. *Mortgage, recitals in; what not notice of.*—A recital in a mortgage that in case of a sale of the property, the proceeds are to be first applied to the payment of the amount secured to be paid by another mortgage on the same premises, is not constructive notice to the mortgagee of the contents of the mortgage referred to, when the mortgages are executed

on the same day, and there was an agreement, between the mortgagees and the mortgagor, that the mortgage having priority should contain stipulations different from those actually contained in it, there being no evidence as to which was first executed.

3. *Confederate money, payment of; when extinguishes debt.*—The acceptance of payment of a debt in Confederate currency, by the owner, in his own right and not in a fiduciary capacity, extinguishes the debt.

APPEAL from Chancery Court of Montgomery.
Heard before Hon. ADAM C. FELDER.

This was a bill in equity, exhibited by the appellee, Scott, against the appellants, B. K. Ponder and F. H. Cobb, and sought to enjoin Ponder from selling certain lands mortgaged by Cobb to Ponder, and also to himself, on the same day, under an agreement to which all the parties to the suit were parties, on the ground that the mortgage executed by Cobb to Ponder, was given to secure a greater sum of money than the amount, which, by the terms of the agreement, was to be secured by the mortgage which was to have priority over complainant's. The facts in relation to this agreement are fully set out in the opinion.

The complainant, Scott, charged in his bill that the amount of the note, which was the consideration of the mortgage, was for a loan of money, with usurious interest included thereon, and prayed that an account might be stated between the defendants to ascertain the amount really due on the note secured by said mortgage, and also for general relief, and averred a willingness and readiness to pay into court whatever sum should be required to remove the incumbrance on said property by said mortgage to Ponder.

It was proven that complainant, before the filing of the bill, offered to pay Ponder the sum of $1010, as the amount due on said mortgage, which was refused. The evidence also showed, that the note secured by mortgage to Ponder, was made up of the amount of a loan of money in 1859, with interest thereon at the rate of 10 per cent per annum, after scaling some payments made thereon in Confederate currency.

The cause was submitted, on bill, answers, exhibits and

the testimony. The final decree rendered by the chancellor, after adjudging the amount due Ponder on the note, after deducting usurious, and allowing lawful interest and payments proved, to be $1093 63, entitled to a priority of payment out of the proceeds of sale of lands mortgaged, and stating amount found to be due complainant, decrees that both of the mortgages be strictly foreclosed ; that Ponder be perpetually enjoined from selling under the powers of sale in his mortgage; that the defendant, Cobb, pay the amounts stated to be due Ponder, and complainant, and that the register, in default of payment thereof, sell the lands, &c., and out of proceeds, first pay Ponder, &c.

The errors assigned are (among others)— .

1st. The decree of the chancellor.

2d. The relief granted respondent Cobb.

WATTS & TROY, for appellant.

RICE, SEMPLE & GOLDTHWAITE, *contra.*

B. F. SAFFOLD, J.—An agreement was made between the parties to this suit, by which Cobb and Scott were to exchange lands, and Ponder was to release Cobb's land from a mortgage held by him, and in lieu of it take another mortgage, for what was due on the first, on the land to be received by Cobb from Scott.

As a condition to his assent to this arrangement, and to a twelve months extension of time for payment of the debt due him, Ponder required Cobb to scale a payment which he had made on this debt in 1863, in Confederate money, and to give a new note for the amount they ascertained to be due. Scott was not informed of this transaction. Deeds, conveying the lands exchanged, were made by the proper parties. Cobb executed to Ponder a mortgage on the land received from Scott to secure the new note. He also mortgaged the same premises to Scott, to secure the balance due him on the exchange, providing for the sale of the property in default of payment, and disposing of the proceeds of the sale as follows : to the payment of, 1st, the costs of the sale ; " 2d, the amount secured to be paid to B. K. Ponder, by a mortgage on said premises;" 3d, the amount due Scott, &c.

These deeds and mortgages were all executed on the same day, and filed for record on the next day after their execution.

Ponder being about to sell the premises conveyed by his mortgage, Scott filed his bill to enjoin him. He charges that he was induced to exchange lands with Cobb, and to allow Ponder's mortgage to have precedence over his, by the representations of Cobb and of A. F. Given, the agent of Cobb, that there was very much less due to Ponder than was claimed by him; that the agreement between Ponder and Cobb, to scale the payment made in Confederate money, and to give a new note, was unknown to him, and was a violation of their agreement with him. Ponder, in response, insists that the only agreement made by him was with Cobb, and that it was at Cobb's request that he consented to give up his first mortgage and take another on the other premises, provided it should have precedence over Scott's, and be for the amount due after scaling the payment in Confederate money. He admits that the understanding between the parties was that his mortgage was to be for the amount due on his first mortgage, but contends that the amount of the new note is the amount justly due on the said mortgage.

The bill asserts, and the answers and testimony of the defendants admit, that Ponder was to have a prior mortgage on the land, conveyed by Scott to Cobb, for the amount actually due on a mortgage held by him on the land conveyed by Cobb to Scott. The evidence shows, that, on the 23d of January, 1866, Cobb agreed with Ponder to scale the payment in Confederate money to its gold value, and gave him a new note for the balance thus ascertained to be due; that this transaction was made during the pendency of the negotiation for the exchange of lands, and was unknown to Scott.

It is contended by the appellant, Ponder, that the recital of his mortgage in the mortgage of Scott is sufficient to charge him with constructive notice of its contents. The proposition is well established that notice of an incumbrance on property is notice of its contents.—*Hall v. Smith*, 14 Vesey, 426; *Jones v. Smith*, 1 Hare, 43; Story's Eq. Jur.

vol. 1, § 400. It is, however, not applicable to this case. The mortgage from Cobb to Ponder and to Scott were executed on the same day. The recital in Scott's mortgage, that the proceeds of the sale of the property should be applied to " the amount secured to be paid to B. K. Ponder by a mortgage on said premises," taken in connection with the fact admitted, that Ponder was to have a mortgage on the property, and the entire absence of proof as to which mortgage was first executed, can not sustain a presumption that will charge another with constructive notice to his manifest inquiry. Notice of an intention to execute a deed is not notice of the contents of the deed as executed.—Sugden on Vendors, vol. 2, p. 1058, § 68 ; Spencer's Eq. Jur. vol. 2,. p. 758 ; *Cothey v. Sydenham*, 2 Bro. 391, 393 ; *McGregor v. Brown*, 5 Pick. 174 ; *Warden v. Adams*, 15 Mass. 233. One of the reasons of the law of constructive notice is that prior transactions shall prevail over subsequent ones, unless the omission of something to be done by the former contractor will cause injury to the latter. Nor should any presumption be indulged against either of these parties, under the particular circumstances of this case, from what appears to be the simultaneous execution of these mortgages. They thought they understood each other, and if either was honestly mistaken he is entitled to relief in equity.

Before and at the time of the execution of these deeds of sale and mortgages Scott had notice of an existing mortgage held by Ponder, on the land of Cobb. This mortgage describes a certain note as the evidence of its consideration. On this note were credits, not specifying in what currency paid, but using the general term " dollars," as did the promise to pay. Scott is charged with constructive knowledge of this. If we add to this knowledge, the information given to him by Cobb and by Given, who, as the agent of Cobb, paid the credits to Ponder, the reception by Ponder of the payment, his acquiescence in it for nearly three years, and his declaration that he would not have asked Cobb to scale the payment if he had not desired time on his debt, and the transfer of his mortgage to other property, we are obliged to conclude that Scott was justi-

fiable in acting on the belief that the incumbrance which he consented should be prior to his, was of insignificant amount, and that Ponder himself regarded his recent contract with Cobb as the valid consideration for his new note.

If the payment in Confederate money is no payment at all, or if it is valid only for the amount agreed on between Cobb and Ponder, then, by the terms of the agreement between all the parties, Scott has no case against Ponder. If it is valid for the full amount, expressed in its endorsement on the note, he is entitled to the relief he seeks. The Confederate currency was one of the agencies resorted to by the adherents of the Confederate government to carry on the war against the United States. But no law of that government or of the State of Alabama compelled a creditor to take it in discharge of his credits. There is no proof in this case that any duress was employed to command its acceptance. Ponder, as a free agent, could have refused it if he desired to do so, or he could have accepted it partially or conditionally. He could have forgiven the debt entirely, or cancelled it in whole or in part, for any consideration deemed sufficient by him. The Confederate money, we know, was worth something at the time it was offered. Whether worthless or not, it was tendered to him as a satisfaction of so much of the indebtedness due him. In the free exercise of his right to dispose of his property as he pleased, not being the agent, trustee, or representative of another, he accepted it as such, and he must be bound by it.

The chancellor proceeded to determine the indebtedness between the defendants. In this we think there is error. The pleadings do not put in issue their rights against each other. The new contract made by them may or may not be valid. The defense of usury is a personal privilege, and must be pleaded. Our conclusion is that the appellee is entitled to the relief for which he prays, but that a cross bill, or an amendment of the pleadings, is necessary to decide any issues between the defendants.

Decree reversed, and cause remanded.

NOTE BY REPORTER.—On 23d of July, 1869, the appel-

Ponder et al. v. Scott.

lants applied for a rehearing, to which the following response was made at the present term :

B. F. SAFFOLD, J.—The appellant applies for a rehearing on the ground, that by the decision rendered he loses the security afforded by his first mortgage, for the amount ascertained to be due to him from Cobb, after scaling the payments made in Confederate currency.

Ponder himself testifies that he required the scaling as the consideration of his consent to relinquish the land conveyed by his first mortgage, and accepted another on that which Cobb was to receive in exchange from Scott, and that he would not have asked Cobb to scale the payment if he had not desired time on his debt, and the transfer of his mortgage to other property.

Scott asserts, and Ponder admits, that the latter was to have a prior mortgage on the land conveyed by the former to Cobb for the amount actually due on the mortgage to be relinquished. The note secured by this last mentioned mortgage was endorsed with credits, not specifying in what currency paid, but using the general term "dollars." Scott was charged with knowledge of this note and the credits on it, and as Ponder admitted that he had received the credits at their nominal value, we held the note to be paid to that amount.

As the amount "secured to be paid" in the mortgage given by Cobb to Ponder, on the land received from Scott was not the amount due on the mortgage relinquished, and the two mortgages made by Cobb, one to Ponder, and the other to Scott, were executed on the same day, without any evidence of which was executed first, we can not, under the circumstances, hold Scott to a knowledge of the contents of the one to Ponder.

A rehearing is denied.