# Coster *et al.* v. Barrett.

*Bill in Equity by Infant to set aside Sale of Lands made under Decree of Probate Court.*

*Sale of infant's lands under decree of Probate Court in* 1863 ; *when set aside.* — Where the real estate of a minor was sold for reinvestment, under a decree of the Probate Court, in 1863, and payment was made in Confederate treasury notes, which were invested in Confederate bonds, and wholly lost to the minor; and the sale was reported to, and confirmed by the Probate Court, and a deed made to the purchaser by its order, — a court of equity will set aside the sale, and restore the land to the minor, as against the original purchaser, or a sub-purchaser from him with notice.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed in August, 1869, by John W. Barrett, an infant, who sued by his next friend, against George W. Coster, Thomas B. Coster, M. T. Sprague, and Turner Reavis, and sought to set aside a sale of certain real estate belonging to the complainant, which had been sold under the following circumstances, as stated in the opinion of the court : " The complainant was a minor, four years old, when his guardian sold his real estate for reinvestment, under an order of the Probate Court. The order of sale was obtained in December, 1862, and the sale was made in February, 1863. George W.

[Coster v. Barrett.]

Coster and M. T. Sprague became the purchasers; and by agreement between them and the guardian, the terms of sale, as specified in the order, were departed from, and the purchase money was paid presently, in Confederate treasury notes. These facts were reported to the court; whereupon the sale was confirmed, and a conveyance was made to the said purchasers by its order. Afterwards, in May, 1865, the purchasers sold and conveyed the land to Thomas B. Coster, in satisfaction of an antecedent debt due to him from them. The Confederate currency was converted into Confederate bonds by the guardian, and has been wholly lost to the ward. In consideration of these facts, he seeks the intervention of equity, to have the sale set aside and the land restored to him. The bill was filed in August, 1869. The chancellor granted the relief sought, and his decree is now assigned as error."

JNO. T. TAYLOR, for appellants. — The sale was in all things regular according to the Confederate laws, and no fraud is proved or charged. Although the order was to sell on time, and the purchaser was allowed the option of paying cash, yet this fact was reported to the court, and was proved to be beneficial to the ward. At most, it was a matter within the discretion of the court, and could only have been revised under Ordinance No. 40 of the Convention of 1867. Session Acts 1868, p. 187. That ordinance has the effect to ratify and confirm those Confederate decrees which are not revised in the way prescribed by it, and within the time. *Griffin* v. *Ryland & Bruce*, 45 Ala. 690.

The decree then stands on the footing of an executed foreign judgment, rendered by a court which had jurisdiction of the subject matter and of the parties, and is valid and binding by the laws of the foreign government until reversed; and " it is to be held equally valid and binding in every other country where the question may come to be litigated." Story's Conflict of Laws, §§ 331, 332. " If all the parties were citizens of such foreign government, and the court had jurisdiction of the parties and the subject matter, and the decree is carried into effect, it is then *res adjudicata*, which ought to be received as conclusive evidence of right, and under such circumstances is entitled to universal conclusiveness and respect." Ib. § 598; also, *Thorington* v. *Smith*, 8 Wallace; 2 Kent, 120; 45 Ala. 690; Herman on Estoppel, §§ 187, 188. The infancy of the complainant does not affect the principle. All governments are the peculiar guardians of infants, and provide laws by which they may prosecute or defend their rights; and when they are properly before the court, and their rights are passed on, they are bound equally with adults. The Confederate treasury

notes were the currency of the said foreign government, passed current, were used in all trades and purchases, and had at all times a certain gold value. The purchase money was finally lost to the complainant, not by reason of the character of the currency, nor from any fault of the purchasers, but from an injudicious reinvestment by the guardian.

R. H. SMITH, *contra.* (No brief on file.)

B. F. SAFFOLD, J. — [After stating the facts as above.] It is manifest that the land never has been paid for. The guardian, selling for reinvestment, was not authorized to receive Confederate currency. The court, being apprised of the manner of payment, ought not to have ordered a conveyance to be made to the purchaser; and the sub-purchaser, Thomas B. Coster, both on account of the past consideration given by him and the knowledge which he must be supposed to have had of the circumstances of the sale and the manner of payment, cannot be regarded as a *bonâ fide* purchaser without notice. *Houston* v. *Deloach*, 43 Ala. 364; *Hale* v. *Huston, Sims & Co.* 44 Ala. 134; *Ponder* v. *Scott*, 44 Ala. 241; *Whitbread* v. *Jordan*, 1 Y.& C. Exch. 303; Rev. Code, §§ 2096, 2434, 2436,

The decree of the chancellor is affirmed.